People v. Helmel, 154 Ill. App. 449.

---

## The People of the State of Illinois, Appellant, v. W. J. Helmel et al., Appellees.

### Gen. No. 5258.

1. QUO WARRANTO—*power of court to grant or refuse leave to file information.* The granting or refusing leave to file an information in the nature of a *quo warranto* rests in the sound legal discretion of the court acting upon the application therefor.

2. ORDINANCES—*when repeal by implication results.* If two ordinances are inconsistent and cannot be reconciled and both given

effect, the later ordinance operates as a repeal of the earlier one.

3. DRAM-SHOPS—*section 5 of act construed.* Section 5 of the Dram-shop Act does not require a person licensed to run a dram-shop to be a freeholder.

4. DRAM-SHOPS—*what does not invalidate license.* A license to conduct a dram-shop is not invalidated by the fact that other parties are interested in the business of such licensee.

*Quo warranto.* Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910.

**Statement by the Court.** The state's attorney of Rock Island county, on the information of F. Q. Johnson presented to the Circuit Court of said county during the May term, 1909, a petition in the name of the people asking leave to file an information in the nature of a *quo warranto* against W. J. Helmel, Max D. Rosenfield, Charles Vandegenachte and the United Breweries Company.

The proposed information alleged that the respondents without legal license had conducted for the twelve days last prior thereto, and still did conduct, a dram-shop at No. 624 Fifth avenue, in the city of Moline, in said county, and that they usurped the right contrary to law.

The relator's affidavit set up section 1, chapter XX of the Revised Ordinances of Moline passed and approved November 7, 1892, and an ordinance passed and approved June 2, 1902, amending said section, and also an ordinance passed March 23, 1908, approved March 30, 1908, amending said section, and alleged that from the date of the passage of the ordinance of November 7, 1892, to May 3, 1909, the date of issuing of the pretended license, no saloon had been kept or licensed to be kept at 624 Fourth avenue; and that no building was used for saloon purposes or license granted for the same in the block where said building was located; that on May 3, 1909, the mayor of said city issued to respondent Helmel a pretended li-

cense to keep a saloon at 624 Fourth avenue, since which time he and the other respondents had kept a saloon at said number; that Helmel was an agent of the Breweries Company and not a resident of the state of Illinois; that Vandegenachte was an agent and employe of the Breweries Company; that no application was made in writing to the mayor or city clerk; that no petition signed by the owners of at least 50% of the property on both sides of the street on which it was proposed to open such saloon, and within 150 feet of the center of the front of the building in which the saloon was to be located, accompanied said application nor was presented to the mayor or filed with the city clerk.

Respondents made a motion to deny the petition for leave to file the information, accompanied by the affidavits of Rosenfield and Helmel. Rosenfield's affidavit set up the ordinance of November 7, 1892, and that of June 2, 1902, and alleged that they were the only ordinances relative to saloon licensing in force in Moline until September 16, 1907, when an ordinance amending section 1, chapter XX of the Revised Ordinances of the city of Moline of the year 1892, was passed and approved September 17, 1907, authorizing the mayor to grant a license under certain conditions therein set out; and that it repealed the ordinance of November 7, 1892, as amended by the ordinance of June 2, 1902, and substituted the ordinance of September 16, 1907, for the ordinance so amended and in force up to September 16, 1907; that in said last mentioned ordinance there was no provision requiring a petition signed by at least 50% of the property owners, etc., but that this requirement which was a part of section 1 of the ordinance of 1892, was entirely omitted; that the ordinance of March 23, 1908, approved March 30, 1908, was passed at a meeting of the council held on March 23, 1908, at which all members were present except one; that the ordinance of March 23, 1908, did not require a petition to accom-

pany the application and did not contain a provision that no license should be granted to any person for conducting a saloon in any block where there was no building used for saloon purposes or licenses granted for the same, and that this ordinance was substituted for all ordinances passed prior to that time and was the only ordinance in force from March 23, 1908, to May 3, 1909; and that on May 3, 1909, there was no ordinance requiring the application to be accompanied by a petition. The affidavit further stated that on May 3, 1909, Helmel applied to the mayor in writing for a license; that Helmel was not an agent or employe of the Breweries Company and that Vandegenachte was not an employe or agent of Rosenfield or of the Breweries Company but was an employe of Helmel; that the saloon did not belong to affiant or to the Breweries Company but to Helmel.

Helmel's affidavit affirmed the truth of Rosenfield's statements, and presented as exhibits certified copies of the record of the meeting of the city council of March 23, 1908, and his application for a license to conduct a saloon at 624 Fourth avenue in the city of Moline for the first period of the municipal year commencing the third Tuesday of April, 1909. Upon a hearing the court denied leave to file the information, and dismissed the petition at the costs of the relator. The relator excepted and prosecutes this appeal.

LAWRENCE M. MAGILL, G. A. SHALLBERG and J. T. and S. R. KENWORTHY, for appellant.

JOSEPH L. HAAS, for appellees.

MR. JUSTICE WILLIS delivered the opinion of the court.

The granting or refusing leave to file an information in the nature of a *quo warranto* rests in the sound legal discretion of the court acting upon the application therefor. In the case at bar the court refused to

allow the information to be filed upon a consideration of the allegations of the affidavits. The material facts were not disputed, and the main question presented by the affidavits for the determination of the trial court, was whether the ordinance of June 2, 1902, was repealed by the ordinance of March 23, 1908. The question was purely one of law, and it is manifest, could receive as careful consideration on this application as could be given it in case leave to file the information had been granted. It is also fair to assume that upon the same facts, the decision would have been the same on the final hearing of the *quo warranto* as upon the petition for leave to file the information. It is for us to determine whether under the law and the circumstances of the case, the court below decided this point correctly.

Counsel for appellant argue that it should not be assumed that the ordinance of 1908 was ever adopted. It is true that the record of the proceedings of the city council attached to Helmel's affidavit does not show a legal adoption of the ordinance, but relator's affidavit alleges that the ordinance of 1908 was adopted and approved and went into force and still is in force, and appellant cannot be heard to deny the statements contained in his own affidavit.

Section 1, chapter XX of the ordinances of 1892, provided that the mayor was authorized to grant licenses for the sale of intoxicating liquors to persons of full age and good character who should apply to him in writing, upon such person giving a bond in the sum of $3,000 with at least two good and sufficient sureties to be approved by the mayor, who should be freeholders in Rock Island county; that the municipal year beginning on the third Tuesday in April should be divided into two periods: from the third Tuesday of April to the third Tuesday in October to be known as the first period, and from the third Tuesday in October to the third Tuesday in April to be known as the second period; that the applicant should pay the

city clerk a fee of $1 and for the term of one year should pay $500; for the first period $250, and for the second period $250. This ordinance was amended June 2, 1902, by adding that the application be accompanied by a petition signed by the owners of at least 50% of the property on both sides of the street, and within 150 feet of the center of the front of the building; that every application, where it was made necessary that a petition should accompany the application, should be filed in the office of the city clerk; that no license should be granted for opening or conducting a saloon in any block where there "is now" no building used for saloon purposes or license granted for the same. September 16, 1907, an ordinance was passed and approved September 17, 1907, amending section 1, chapter XX of the ordinances of 1892. March 23, 1908, an ordinance was passed which was approved March 30, 1908, entitled, "An ordinance amending section one (1) of chapter XX of the Revised Ordinances of the city of Moline for the year A. D. 1892," which provided that said section "be amended so as to read as follows:" By it the mayor was authorized to grant a license for keeping a saloon within the city of Moline to any person who should apply to him in writing and furnish satisfactory evidence of good character and give a bond of $3,000 with at least two good and sufficient securities to be approved by the mayor, who should be freeholders in Rock Island county; that such applicant should advance to the city clerk a fee of $1,000 and a fee of $1; that the license year be divided into two periods; the first period from the third Tuesday of April to the third Tuesday of October, and the second period from the third Tuesday in October to the third Tuesday in April; that for a year the applicant should pay $1,000, for the first period $500, and for the second period $500, all in advance; that upon compliance with these requirements a license signed by the mayor should be issued under the corporate seal; that the

ordinance should go into effect upon its approval and that all ordinances in conflict therewith were repealed, and particularly an ordinance passed September 16, 1907, and approved September 17, 1907, amending section 1, chapter XX of the Revised Ordinances of 1892. Thus it is not necessary to consider the ordinance of 1907. By the ordinance of 1908 the matter of licensing saloons was left entirely to the mayor and all parts of the city were opened to a saloon license, while the ordinance of 1902 required a petition of property owners to accompany the application and positively forbade the issuance of a license in some parts of the city. Thus the two ordinances were inconsistent, and the rule is familiar that where two statutes are so repugnant that they cannot be reconciled and both given effect, the later statute will operate as a repeal of the earlier statute. Board of Water Commissioners v. People, 137 Ill. 660; David v. Commercial Mutual Accident Co., 243 Ill. 43. The rules for the construction of statutes and municipal ordinances are the same. In re Yick Wo., 68 Cal. 294.

It is also true that when an act is passed providing that a prior statute shall be amended "so as to read as follows" it is elementary that the statute as amended is a substitute for the original, and repeals those parts of the former law which are left out of the substitute. Shadewald v. Phillips, 75 N. W. Reporter 717.

In Ashland Water Co. v. Ashland County, 87 Wis. 209, it was said: "It is, no doubt, a well settled rule in the construction of statutes that, where a statute provides that a certain former statute 'is hereby amended so as to read as follows,' any provision of such former statute which is not found in the new statute is repealed. State v. Ingersoll, 17 Wis. 651; Goodno v. Oshkosh, 31 Wis. 127; Sydnor v. Palmer, 32 Wis. 406; State ex rel. Tervy v. Keaough, 68 Wis. 135-144; 21 Am. & Eng. Ency of Law, 1001. The object of construction is to conform the statute or the

ordinance to the intention of the body enacting it. It is assumed that the enacting body intended to omit from the law those provisions of the old statute or ordinance which are not preserved and re-enacted in the new.''

In Palmer v. City of Danville, 166 Ill. 42, the court said: ''The amendatory act declared that the statute should be amended to read as therein provided, and this operated to repeal the original section.'' People v. Young, 38 Ill. 490; Kepley v. People, 123 id. 367; Louisville & Nashville Railroad Co. v. City of East St. Louis, 134 id. 656.

We conclude that the ordinance of 1908 repealed the ordinance of 1892, and repealed the ordinance of 1902 by implication.

There is no force in the contention of counsel for appellant that none but freeholders can be licensees. Section 5 of the Dram-shop Act from which municipalities derive their authority to license dram-shops, provides that no person shall be licensed to keep a dram-shop unless he shall first give a bond in the penal sum of $3,000 with at least two good and sufficient securities, freeholders of the county in which the license is granted, to be approved by the officer who may be authorized to issue it, but it does not require the licensee to be a freeholder. In People v. Matthews, 53 Ill. App. 305, relied on by counsel, the term ''freeholders of the county'' is discussed only as applying to sureties and the case does not support the contention of counsel.

We regard the allegation in relator's affidavit that the other respondents besides Helmel, were interested in the business, as immaterial. The license was issued to Helmel and that he may have had business relations with others would not invalidate the license.

Although the suggestion is not made by counsel, the fact that the information related to a saloon at 624

Fifth avenue and the application for a license and the affidavits to a saloon at 624 Fourth avenue, was, of itself, a sufficient ground for refusing leave to file the information.

The judgment of the Circuit Court is affirmed.

*Affirmed.*