## CHARLES v. THORNBURGH et al.

No. 3120.  Opinion Filed December 8, 1914.

(144 Pac. 1033.)

1. **INDIANS—Alienation of Lands—Age—Enrollment Records—Effect as Evidence.** Act Cong. May 27, 1908, c. 199, 35 Stat. 313, in part provides: "* * * The enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

Charles v. Thornburgh et al.

**Held:** That such act is not, nor was it, intended to be a rule of evidence; but the purpose of said act is to prescribe terms and conditions upon which members of the Five Civilized Tribes of Indians may alienate their lands, and to prescribe a fixed and uniform rule by which those contracting with such members of said tribes could determine the exact date minors may reach their majority for the purpose of alienating their lands.

2.    **SAME—Operation of Statute—Retroactive Effect.** That part of said act of Congress mentioned in the foregoing paragraph has no application to a transaction relating to a sale of allotted land concluded prior to the date said act took effect.

3.    **INDIANS—Removal of Restrictions—Operation of Statute.** Act of Cong. April 21, 1904, c. 1402, 33 Stat. 189, removing "* * * all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, * * *" authorized a freedman citizen of the Creek Nation to alienate by deed her surplus allotment upon attaining her majority, though a minor at the time of the passage of the act.

(Syllabus by Sharp, C.)

*Error from District Court, Okmulgee County;*

*Wade S. Stanfield, Judge.*

Action by Willie Charles against Anna C. Thornburgh and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Geo. C. Biedleman* and *Merwine & Newhouse,* for plaintiff in error.

*Stanford & Cochran, Harlan Read,* and *Matthews & Ellison,* for defendants in error.

Opinion by SHARP, C. Willie Charles, a citizen freedman of the Creek Nation, enrolled as such, on September 24, 1904, sold and by warranty deed sought to convey title to 120 acres of the land allotted to him by virtue of his said citizenship, to the defendant in error Anna C. Thornburgh. Thereafter and on the 21st day of October, 1904, the grantee in the above-mentioned deed sold said land to the defendants A. A. Vierson and L. L. Sessions. October 15, 1906, said last-mentioned grantees by warranty deed sold said land to the defendant the Standard Investment Company. Thereafter and

on the 21st day of February, 1908, said company by warranty deed attempted to sell and convey title to said land to the defendant L. S. Skelton. November 21, 1907, the allottee, Charles, again attempted to convey said land by making a deed thereto to one Willie Bradford. On September 22. 1910, said Bradford executed a quitclaim deed to his title in and to said lands to the plaintiff. At the trial, on the part of the defendants in error, it was claimed that the allottee, Charles, became 21 years of age on September 8, 1904, or prior to the execution of the deed by Charles to Thornburgh. On the part of the plaintiff, it was contended that according to the rolls of the Creek freedmen, certified to by the acting Commissioner to the Five Civilized Tribes, Willie Charles was fourteen years of age March 17, 1903, hence was a minor on the date of the execution of the Thornburgh deed. The case was tried before a jury; the sole issue submitted being the age of the plaintiff, Willie Charles, on September 24, 1904. The verdict returned was that on said day said Charles was 21 years of age.

For a reversal of the judgment of the trial court, plaintiff relies upon two alleged errors: (1) That the enrollment records of the Commissioner to the Five Civilized Tribes were conclusive evidence of the age of plaintiff; and (2) that on September 24, 1904, the restrictions upon Charles' right of alienation had not been removed.

The first question involves the determination of rights which accrued, and of the effect of transactions which were concluded, prior to the passage by Congress of the act of May 27, 1908 (35 Stat. at L. 313, c. 199), in which it is provided that the enrollment records of the Commissioner to the Five Civilized Tribes "shall hereafter be conclusive evidence as to the age" of any enrolled citizen or freedman of those tribes. There was sufficient evidence, if competent, in view of the statute, to sustain the verdict of the jury. Upon it defendants relied to sustain their title. If, however, the evidence was not competent, and the court erred in excluding, as conclusive evidence of the age of Willie Charles, the enrollment records of the Commis-

sioner to the Five Civilized Tribes, then clearly the judgment of the trial court must be reversed. As has already been noted, the transaction was one that was concluded prior to the passage of the act. The exact question presented has been decided by this court in the following cases: *Williams v. Joins,* 34 Okla. 733, 126 Pac. 1013; *Rice v. Ruble,* 39 Okla. 51, 134 Pac. 49; *Perkins v. Baker,* 41 Okla. 288, 137 Pac. 661; *Scott v. Brakel et al.,* 43 Okla. 655, 143 Pac. 510; *Phillips et al. v. Byrd,* 43 Okla. 556, 143 Pac. 684; *Grayson et al. v. Durant et al.,* 43 Okla. 799, 144 Pac. 592. In *Phillips et al. v. Byrd, supra,* referring to that part of the act of May 27, 1908, providing that the enrollment records "shall hereafter be conclusive evidence as to the age" of said citizen or freedman, it was said:

"That part of said act of Congress quoted has no application to a transaction relating to a contract or sale of lands completed prior to the date said act took effect."

In similar language, it was said in *Scott v. Brakel et al., supra:*

"In the determination of rights which accrued and the effect of transactions concluded prior to May 27, 1908, the enrollment records of the Commission. are not conclusive evidence of the age of any Indian citizen or freedman enrolled theron."

The decision of the Circuit Court of Appeals for the Eighth Circuit, in *Malone et al. v. Alderdice et al.,* 212 Fed. 668, is in harmony with the views of this court; the court in that case citing in support of its conclusion *Williams v. Joins* and *Perkins v. Baker, supra.* It was there, as here, insisted that the action of the Commission to the Five Civilized Tribes in making up the rolls, under authority given it by the various acts of Congress, therein reviewed, was conclusive of the age of the allottee. It was held, however, in answer to this contention, that the action of the Commission in its decisions, recitals, or reports, regarding issues whose determination was not indispensable to enable it to decide who should be enrolled, what lands should be allotted to those enrolled, and how, was, in the

absence of special legislation, such as the act of May 27, 1908, without judicial or other conclusive effect. The court said, in reaching its conclusion:

"The result is that in the determination of rights which accrued and of the effect of proceedings which were concluded prior to May 27, 1908, the enrollment records of the Commission are not conclusive evidence of the age of any Indian citizen or freedman."—citing *Hegler v. Faulkner*, 153 U. S. 109, 117, 118, 14 Sup. Ct. 779, 38 L. Ed 653.

In our opinion, for the reasons already stated, the enrollment records were not competent evidence for any purpose, and such was the conclusion reached by this court in *Grayson et al. v. Durant et al., supra.*

. It is next urged that Charles, having attained his majority subsequent to the passage of the act of April 21, 1904 (33 Stat. at L. 189, c. 1402), and even though he had become of age prior to September 24th of said year, could not alienate his allotted lands. Willie Charles, it will be remembered, was a freedman citizen of the Creek Nation. The position of counsel is that the act of April 21, 1904, only removed restrictions upon those who were adults at the time of the passage of the act, and that the language of the statute does not include those who subsequently became of age. The act in this regard reads:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

The construction urged is untenable. Obviously, the intention of Congress was to pass a general law applicable to certain classes of allottees. Those who were of lawful age at the time of its passage, as well as those who subsequently attained their majority, were within the purview of the act. All others were expressly excluded from its operation. Where the language of a statute, as in the present case, is in general terms, and in words of the present tense, the statute will, as a general rule, be construed to apply not only to things and conditions existing

at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter. 36 Cyc. 1235; *Pacific Milling & El. Co. v. City of Portland,* 65 Ore. 349, 133 Pac. 72, 76, 46 L. R. A. (N. S.) 363; *Carter v. Coharie Lbr. Co.,* 160 N. C. 8, 75 S. E. 1074; *Schus v. Powers-Simpson Co.,* 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887.

Construing Clay's Dig. of Alabama, 112, sec. 47, which provided that:

"All the notes, bills, bonds, or other evidence of debt, held by the state bank or branch banks, payable to the cashier, or the person who has filled the office of cashier, of said bank, or branch banks, may be sued, and collected in the name of the several banks, in the same manner as if they had been made payable directly to said bank, or branch banks, by which the paper has been taken or discounted"

—the Supreme Court of that state, in *Davis et al. v. Branch Bank of Mobile,* 12 Ala. 463, held that the act applied equally to notes which were executed at the time of its passage and those which had been made since.

In *United States v. Shock* (C. C.) 187 Fed. 862, which involved the construction of the various acts of Congress on the subject of the right to alienate lands of the citizens of the Creek Nation, and to tax the same when alienable, the United States Court for the Eastern District of this state, in passing upon the contention here urged, said:

"For reasons sufficient to Congress, it saw fit to remove restrictions from the surplus lands of all adult allottees of the classes mentioned. The same reasons apply with equal force to those subsequently becoming adults. No reason is suggested, nor is any conceived, for making any distinction between those of the class named who were of age on April 21, 1904, and those subsequently becoming of age. To make such a distinction would, I think, be in direct violation of the plain purpose of the act. * * * In the act of April 21, 1914, the class Congress has in mind consists of those not of Indian blood. It excepts minors of the class named, from the operation of the law merely because of their minority, and no sound reason can

be urged, why, when minors of the class named become of age, they are not within, the purview of the law.  *  *  *"

In *Goat et al. v. United States,* 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841, the United States had brought suit to cancel certain conveyances made by Seminole freedmen, alleged to be in violation of existing restrictions on alienation. The broad position was taken by the government that all conveyances of the land allotted to members of the Seminole Tribe were void because made prior to the date of patent under the agreement between the Commission to the Five Civilized Tribes and the Seminoles, set forth in the opinion. The court, however,. directed attention to the act of April 21, 1904, removing the restrictions upon alienation by adult allottees of the Five Civilized Tribes who were not of. Indian blood, of lands other than homesteads. It does not appear from the opinion when the adult allottees, whose conveyances were sought to be canceled, attained their majority. It was, however, held that adult grantors, after the passage of the act of April 21, 1904, stood precisely in the same position as though they had received their allotments without any restriction upon their right to alienate the interest thus acquired. The conclusion reached by the court was:  (1) That the bill should be sustained so far as it related to conveyances of homestead lands; (2) that it should also be sustained to the extent that it was directed against conveyances of surplus lands made by freedmen allottees who were minors, and thus excepted from the provisions of the act of April 21, 1904, and those made by adult allottees prior to that act; and (3) that so far as the bill related to conveyances of surplus lands, made by adult freedmen allottees, subsequent to April 21, 1904, it should be dismissed. See, also, *Deming Investment Co. v. United States,* 224 U. S. 471, 32 Sup. Ct. 549, 56 L. Ed. 847. We find nothing in these recent expressions of the Supreme Court limiting the right to alienate to those wno were adults on April 21, 1904, and do not believe it was intended to announce such a rule.

In addition to that part of the act already quoted, the further provision is found:

"* * * And all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian agent at the union agency."

Giving effect to the same rule of construction insisted upon, the Secretary of the Interior, under this provision of the act, would be without authority to remove restrictions from those who attained their majority after its passage. Such was not the intention of Congress, neither can the position be maintained from the language employed.

The judgment of the trial court should, in all things, be affirmed.

By the Court: It is so ordered.