UNITED STATES v. ST. PAUL, M. & M. RY. CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   May 27, 1915.)

No. 2564.

1. PUBLIC LANDS ⬤➡120—SUITS FOR CANCELLATION OF PATENTS—STATUTORY LIMITATION.

Act March 2, 1896, c. 39, § 1; 29 Stat. 42 (Comp. St. 1913, § 4901), limits the time within which suits may be brought for the cancellation of patents to lands issued under railroad or wagon road grants, either before or after its enactment, "provided that no suit shall be brought or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the government or its officers to withdraw the same from sale or entry." Held, that such proviso is not limited to lands patented prior to the passage of the act, but applies as well to lands patented after that date.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⬤➡120.]

2. STATUTES ⬤➡263—CONSTRUCTION—PROSPECTIVE OPERATION.

Legislative acts are presumed to be prospective in their operation, and courts will not limit them to past acts or past transactions, unless such clearly appears to have been the legislative intent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 344, 349; Dec. Dig. ⬤➡263.]

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit in equity by the United States against the St. Paul, Minneapolis & Manitoba Railway Company and the Great Northern Railway Company. Decree for defendants, and the United States appeals. Affirmed.

Burton K. Wheeler, U. S. Atty., of Butte, Mont., Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont., and Frank Woody, Jr., Asst. U. S. Atty., of Butte, Mont., for the United States.

Veazey & Veazey, of Great Falls, Mont., for appellees.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. [1] By Act March 3, 1857, c. 99, 11 Stat. 195, and Act March 3, 1865, c. 105, 13 Stat. 526, there was granted to the territory of Minnesota certain public lands for the purpose of aiding in the construction of railroads in that territory. The appellee the St. Paul, Minneapolis & Manitoba Railway Company has succeeded to all the rights and privileges of the territory of Minnesota under the provisions of these acts. At the time the grant was made the Missouri river formed the western boundary of the territory, but soon thereafter the state of Minnesota was admitted into the Union, with its western boundary fixed at a point considerably east of the western boundary of the former territory. In the administration of this land grant the land department held that it was the fixed policy of the government to limit grants in aid of railroads wholly within a

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

state or territory to lands lying within the same state or territory, and the claim of the railroad company to lands within the limits of the grant, but without the limits of the state of Minnesota, was rejected. In St. Paul, etc., Ry. Co. v. Phelps, 137 U. S. 528, 11 Sup. Ct. 168, 34 L. Ed. 767, it was held that the specific terms of the act of Congress could not be limited or controlled by any general governmental policy, and the title of the railway company to lands within the limits of the grant, but west of the western boundary of the state, was accordingly confirmed. To obviate the hardships to settlers resulting from this decision, Act Aug. 5, 1892, c. 382, 27 Stat. 390, entitled "An act for the relief of settlers upon certain lands in the states of North Dakota and South Dakota," was passed. The preamble to that act recites that:

"Whereas, under the rulings of the General Land Office the extension into Dakota Territory, now states of North Dakota and South Dakota, of the limits of the grants of land made by Congress to aid in the construction of the several lines of railroad now owned by the St. Paul, Minneapolis & Manitoba Railway Company was denied, and in consequence of said rulings lands within the limits of the said grants in * * * said states have been claimed, settled upon, occupied, and improved by numerous persons in good faith under color of title or of right to do so derived from the various laws of the United States relating to the public domain, and are now claimed by them, their heirs, or assigns, and many of said lands have actually been patented to such occupants or to their grantors; and whereas, under recent construction of said grants the said occupants, improvers, or purchasers, are liable to be evicted from their holdings: Now, therefore, for the purpose of relieving the said occupants, improvers, and purchasers of the said granted lands from the hardship of being now deprived of the same under the circumstances aforesaid, be it enacted," etc.

Section 1 then provides:

"That the Secretary of the Interior shall, as soon as conveniently may be done, cause to be prepared and delivered to the said railway company a list of the several tracts which have been purchased, claimed, occupied, and improved, as stated in section two of this act, and are now claimed by such purchasers or occupants, their heirs or assigns, according to the smallest government subdivisions. Within a reasonable time after the receipt by the said railway company of the said list, it shall execute under its corporate seal and deliver to the Secretary of the Interior its deed of conveyance releasing to the United States all its claims upon the lands described in said list, and shall also procure and cause to be released to the United States all liens and claims to said lands derived through or under said company, whereupon all right, title, and interest of the said railway company to each of such tracts shall revert to the United States, and such tracts shall be treated, under the laws thereof, in the same manner as if no rights thereto had ever vested in the said railway company. * * *"

Section 2 provides:

"That the said railway company is hereby permitted to select, in lieu of any lands forming odd-numbered sections or parts thereof situated in the state of North Dakota or in the state of South Dakota, within the ten-mile limits of a grant of lands made to the territory of Minnesota * * * opposite to and coterminous with such portion of said railroad as was constructed and completed within the time required by the said grant and the acts amendatory thereof for the construction and completion of the whole of said railroad, which, prior to January first, anno Domini eighteen hundred and ninety-one, any person had purchased or occupied or improved, in good faith, under color of title or right to do so, derived from any law of the United States relating to the public domain, but not including any lands with-

in the limits of the grant, to aid in the construction of the St. Vincent branch of said road, as located under the act of March third, eighteen hundred and seventy-one, upon which any person or persons had, in good faith, settled and made or acquired valuable improvements thereon prior to March, eighteen hundred and seventy-seven, an equal quantity of non mineral public lands, so classified as non mineral at the time of actual government survey which has been or shall be made, of the United States not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection lying within any state into or through which the railway owned by said * * * company runs, to the extent of the lands so relinquished and released. * * * "

Section 3 provides:

"That upon the filing by the said railroad company, at the local land office of the land district in which any tract of land selected in pursuance of this act shall lie, a list describing the tract or tracts selected, and the payment of the fees prescribed by law in analogous cases, and the approval of the Secretary of the Interior, he shall cause to be executed, in due form of law, and deliver to said company, a patent of the United States, conveying to it the lands so selected. * * * "

On the 31st day of March, 1906, the appellee the St. Paul, Minneapolis & Manitoba Railway Company filed in the United States land office at Kalispell, Mont., a certain list of lands, describing, among others, the lands now in controversy, pursuant to the provisions of section 2 of the act of 1892, supra. This list was thereafter approved by the Secretary of the Interior, and on the 24th day of June, 1907, a patent issued therefor. The present suit was instituted by the United States to set aside this patent on the ground of fraud and mistake—fraud on the part of the railway company in representing that the land was nonmineral in character, and mistake on the part of the Land Department in failing to notify the register and receiver of the United States land office at Kalispell, Mont., that the lands had been classified as mineral by the board of mineral land examiners under Act Feb. 26, 1895, c. 131, 28 Stat. 683, and of a decision of the Secretary of the Interior approving and sustaining this classification. Inasmuch as the right of the government to maintain the suit at all is the only question presented for our consideration, a more detailed statement of the allegations of the bill of complaint is deemed unnecessary.

Section 1 of Act March 2, 1896, c. 39, 29 Stat. 42 (Comp. St. 1913, § 4901), provides as follows:

"That suits by the United States to vacate and annul any patent to lands heretofore erroneously issued under a railroad or wagon road grant shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents, and the limitation of section eight of chapter five hundred and sixty-one of the Acts of the Second Session of the Fifty-First Congress and amendments thereto is extended accordingly as to the patents herein referred to. But no patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed: Provided, that no suit shall be brought or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the government or its officers to withdraw the same from sale or entry."

The court below held that the prosecution of the present suit was prohibited by the proviso to the latter section, and from the decree of dismissal this appeal was allowed and prosecuted.

Notwithstanding a suggestion in the government brief to the contrary, we think it clearly appears from the allegations of the bill of complaint that the land in controversy was patented to the railway company "in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the government or its officers to withdraw the same from sale or entry." The patent was applied for and issued under the act of 1892, and the lands granted by that act were in lieu of lands relinquished by the railway company in consequence of the failure of the government and its officers to withdraw the Dakota lands within the limits of the original grant from sale or entry. Does, then, the proviso to the act of 1896 prohibit the maintenance of this suit? Such would seem to be the plain import of the language used, but we will consider briefly the argument of the government in support of the opposite view.

[2] It is first contended that the proviso has no application to this case, because it is by its terms limited to lands patented prior to the passage of the act. We cannot so construe it. In a former part of the section specific reference is made to patents *heretofore* erroneously issued, and to patents *hereafter* issued, and if Congress intended to limit the proviso to lands patented prior to the passage of the act it would have used appropriate and specific language for that purpose. The expression "that were certified or patented" refers to the mode in which the title was acquired rather than to the time of its acquisition. Legislative acts are presumed to be prospective in their operation, and courts will not limit them to past acts or past transactions, unless such clearly appears to have been the legislative intent. Why grants of this particular kind were excepted from the general rule permitting suits to annul land patents we are not advised. The reason suggested by the railway company, namely, that the company had relinquished lands, the title to which had been confirmed by a decision of the Supreme Court of the United States, and was awarded lands with an equally indefeasible title, does not appeal to us. Had the proviso been attached to the lieu land or relief act of 1892, the reason suggested would be a cogent one; but, when we find it attached to an enactment years later in point of time and of general application, the argument loses all its force. But we may only consider the reason for the enactment as an aid to construction, and we see no reason why patents issued prior to the passage of the act should stand upon a different footing from patents issued thereafter. We are far from convinced that Congress so intended.

The contention on the part of the government that the proviso does not apply where patents have been procured through fraud on the part of the grantee, or through mistake on the part of the government or its officers, or where mineral lands have been patented under agricultural land laws, or vice versa, calls for but passing notice. Fraud and mistake are the principal grounds, if not the only grounds, upon

which land patents can be assailed or annulled, and to hold that the act does not apply in such cases would be to repeal it by judicial construction. As said by the Supreme Court of the United States in United States v. Winona, etc., Ry. Co., 165 U. S. 463, 476, 17 Sup. Ct. 368, 371 (41 L. Ed. 145):

"Under the benign influence of this statute it would matter not what the mistake or error of the Land Department was, what the frauds and misrepresentations of the patentee were, the patent would become conclusive as a transfer of the title, providing only that the land was public land of the United States and open to sale and conveyance through the Land Department."

This case was approved in United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447, 450, 28 Sup. Ct. 579, 580 (52 L. Ed. 881), where the court said:

"The patent had been issued in 1883 by the President in due form and in the regular way. Whether or not he had authority to make it, the United States had power to make it, or to validate it when made, since the interest of the United States was the only one concerned. We can see no reason for doubting that the statute, which is the voice of the United States, had that effect. It is said that the instrument was void, and hence was no patent. But the statute presupposes an instrument that might be declared void. When it refers to 'any patent heretofore issued,' it describes the purport and source of the document, not its legal effect. If the act were confined to valid patents, it would be almost or quite without use."

If a bill of complaint to annul a patent charged neither fraud nor mistake, the defendant would require the aid of no statute of repose, no statute of confirmation, for his protection. He. would find ample defense and protection in the deficiencies of the complaint itself.

We are satisfied, therefore, that the prosecution of this suit is prohibited by law, and the decree of the court below is accordingly affirmed.