UNITED STATES v. BOOTH–KELLY LUMBER CO. et al.

(District Court, D. Oregon. November 26, 1917.)

No. 7337.

1. PUBLIC LANDS ⬚120—SUIT FOR CANCELLATION OF PATENT—LIMITATION.

The provision of Act March 3, 1891, c. 561, § 8, 26 Stat. 1099 (Comp. St. 1916, § 5114), limiting the time for the bringing of suits by the United States for the cancellation of patents to six years "after the date of the issuance of such patents," is subject to the well-established equitable rule that, where there is concealed fraud, the statute will not begin to run until the fraud is discovered, or notice of it is imputable to the government.

2. PUBLIC LANDS ⬚120—SUIT FOR CANCELLATION OF PATENT—LIMITATION.

Facts considered, and held not such as to charge the United States with notice that an entry of a stone and timber claim was fraudulent until within six years prior to the bringing of suit for cancellation of the patent.

3. PUBLIC LANDS ⬚120—SUIT FOR CANCELLATION OF PATENT—DEFENSES.

That a majority of the stock of a corporation which fraudulently acquired public land is in the hands of persons who purchased since the acquisition of the land, and without knowledge of the fraud, is not a defense to a suit by the United States for cancellation of the patent.

4. NOTICE ⬚6—CONSTRUCTIVE "NOTICE"—KNOWLEDGE SUFFICIENT TO PUT ON INQUIRY.

Whatever puts a party upon inquiry amounts, in judgment of law, to "notice," provided the inquiry becomes a duty and would lead to a knowledge of the real facts by the exercise of ordinary intelligence; but the circumstances known to him must be such as ought reasonably to have excited his suspicion and led him to inquiry.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Notice.]

In Equity. Suit by the United States against the Booth-Kelly Lumber Company and Daniel H. Brumbaugh. Decree for complainant.

Clarence I. Reames, U. S. Atty., and John J. Beckman, Asst. U. S. Atty., both of Portland, Or.

Smith & Bryson, of Eugene, Or., and Mark Norris, of Grand Rapids, Mich., for defendants.

WOLVERTON, District Judge. This is a suit by the government to set aside a patent issued to one Daniel H. Brumbaugh September 9, 1904, under the provisions of the Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89). On December 17th following Brumbaugh conveyed the land by quitclaim deed to the defendant the Booth-Kelly Lumber Company. The basis of the suit is alleged fraud upon the government, committed by Brumbaugh in the procurement of the patent, in that the entry was not made for Brumbaugh's personal use and benefit, but under contract and understanding with the Booth-Kelly Lumber Company to convey the land entered to said company when patent was procured from the government.

The lumber company has interposed several defenses, namely, that it had no such contract or understanding with Brumbaugh, as alleged; that the statute of limitations for instituting the suit had elapsed when it was commenced; that the government had notice and knowledge

of the alleged fraud for more than six years prior to the institution of the suit; that the government is chargeable with laches in the discovery of the alleged fraud; and that a large percentage of the stockholders, holding more than a majority of the capital stock of the lumber company, have become such since the perpetration of the alleged fraud, and are innocent purchasers for value of such stock. Of these in their order:

As to the first contention, it hinges upon a question of fact. Brumbaugh testifies in effect that he had a contract or understanding with Mr. John F. Kelly, who was the timberman for the lumber company, that he should make a timber and stone entry of the land in dispute, and that Kelly should pay all the expenses for making the entry and final proof, also the cash payment of $400 required by law, and pay him $100 additional for his claim, and that Brumbaugh was to deed the land to the lumber company when patent was issued.

I have no reason for doubting Brumbaugh's testimony, although for a time he made statements out of court contradictory thereof, in an effort, as he says, to cover up the transaction and to keep the true state of affairs from the knowledge of the government. He finally made a clean breast of the whole situation to government officials, and when called into court on a former case testified to the matters substantially as here narrated. Mr. Booth, who is a stockholder in the lumber company, and who was at the time manager, has given testimony tending in a measure to contradict Brumbaugh; but the books of the lumber company, which were introduced in evidence, corroborate Brumbaugh. They show that payments were made in accord with his statement. What is most significant, however, is that Kelly, who made the arrangement with Brumbaugh for the company, did not take the stand; nor was his absence accounted for. The agreement as detailed by Brumbaugh is therefore satisfactorily established.

[1] Whether the statute of limitations had run against the government depends upon whether notice or knowledge of the fraud is imputable to it prior to six years preceding the institution of the suit. The statute (Act March 3, 1891, 26 Stat. 1093), limits the institution of a suit to set aside a patent to six years after the date of its issuance. It is insisted that, a specific event having been designated from which the statute will begin to run, the time of the occurrence of the event is controlling, whether the suit is founded upon fraud or not, and that such is the intendment of the act. The Circuit Court of Appeals of this Circuit, however, following the case of Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636, has differently interpreted the act, and has held that it is subject to the well-established equitable rule that, where there is concealed fraud, the statute will not begin to run against the party complaining until he has acquired notice or knowledge of the fraud. Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267; Id., 203 Fed. 394, 121 C. C. A. 498. The same interpretation has been given to the statute by the Circuit Court of Appeals, Eighth Circuit, in a well-considered case. United States v. Exploration Co., 203 Fed. 387, 121 C. C. A. 491.

I am, of course, bound by the principle enunciated by these cases. The exact doctrine of the Bailey Case is that, where there has been

no negligence or laches on the part of the one complaining in coming to the knowledge of the fraud which is the foundation of the suit, and where the fraud has been concealed or is of such a character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing or those in privity with him. In ascertaining the rule, Mr. Justice Miller has this to say:

"We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

But, in applying the rule to the case then under consideration, the court indicates that the fraud must have been concealed, or of such character as to conceal itself, to toll the statute. As I read the case in the Circuit Court of Appeals, a like application is made to the present statute.

Nor does the later case of United States v. St. Paul, M. & M. Ry. Co., 225 Fed. 27, 139 C. C. A. 301, in any way trench upon the holding in Linn & Lane Timber Co. v. United States. The provision of the statute which was adjudged to be controlling was not a limitation statute at all, but constituted an exception to the limitation provisions, and under the conditions recited barred any action whatsoever. The exception was appended in the way of a proviso, and the court, construing the proviso, simply held that the suit instituted by the government to set aside the patent on the ground of fraud and mistake came within the proviso, and would not lie. It was further contended by the government that the proviso was without application where the suit was founded upon fraud or mistake, but the court held to the contrary view. There was no attempt whatever at a construction of the provisions respecting the limitations of actions contained in the same statute, namely, Act March 2, 1896, c. 39, 29 Stat. 42 (Comp. St. 1916, §§ 4901–4903).

[4] Notice and knowledge of the fraud will set the statute in operation. No one questions the principle. But a party claiming fraud and lack of knowledge concerning it may be guilty of laches in ascertaining its existence, which will preclude him from asserting want of knowledge, where he has been let into facts and circumstances which are calculated to put a reasonably intelligent man upon inquiry as to the main fact, which inquiry, if seasonably pursued with reasonable diligence, would lead to a discovery of such main fact. Stated generally, the rule is that whatever puts a party upon inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty and would lead to a knowledge of the real facts by the exercise of ordinary intelligence. The circumstances known to him must be such as ought reasonably to have excited his suspicion and led him to inquiry, and he must be allowed a reasonable time within which to make such inquiry before being affected with notice. 29 Cyc. 1114, 1115, 1116. As stated by the Supreme Court of Wisconsin, his information must be "of such a nature as would impress a reasonable man with the belief that a fraud had been committed and would, upon diligent

inquiry, lead to the discovery of the facts." O'Dell v. Burnham, 61 Wis. 562, 21 N. W. 635.

[2] Now, coming to the facts in this case, the patent was issued September 9, 1904. Brumbaugh deeded to the lumber company December 17, 1904. The company caused the deed to be recorded December 2, 1907; not before. The first absolute knowledge the government had of the fraud was on December 20, 1910, when Brumbaugh made a clean breast of the affair to Hon. John McCourt, then United States district attorney for the district of Oregon. At all times prior to that he had consistently denied that there was any taint of fraud in his transaction with the government, to every detective, special agent, and officer of the government who inquired of him touching the same. The present suit was instituted December 12, 1916. So that, if knowledge of the fraud was first acquired by the government December 20, 1910, and was not imputable to it prior to December 12, 1910, the suit was commenced in time.

In a careful survey of the testimony, I find two circumstances which might have afforded a clue to the fraud if they had been traced out. One is when Special Agents Veatch and Watts were informed in 1904 or 1905 by Brumbaugh that he had sold to the lumber company. If the special agents had at that time consulted the county records, they would have ascertained that the deed was not then on record, for it was not recorded until December 2, 1907. But the special agents were then looking into the Jones-Cook cases, and it was only incidentally that they inquired of Brumbaugh about his own entry, and were informed that he had taken the claim for himself, and were thus misled. The other circumstance is that Mr Heney, the special prosecutor for the government in the land fraud cases, had access to and did actually examine the books of the lumber company. If his attention had been specially called or attracted to the Brumbaugh account, he might have found credits and debits from which the inference might have been drawn that the Brumbaugh transactions with reference to his claim were not altogether regular. The account, however, contained many items (Brumbaugh having been in the employ of the lumber company for a considerable length of time), and the entries with reference to the claim itself were disguised, so that on the face of the account it had the appearance of a record of perfectly legitimate transactions. Mr. Heney, again, was inquiring into entirely different transactions, with no special reference to the Brumbaugh matter.

One other circumstance needs special notice. There is a report on file in the General Land Office, of date March 3, 1915, which bears the information that Special Agent Laughlin had under investigation the Brumbaugh claim in September, 1910, and that, on the 7th of that month, he had an interview with Brumbaugh, wherein Brumbaugh insisted that his entry was made in good faith. It seems that Laughlin's suspicions were aroused at the time, and his persistence finally led to Brumbaugh's confession on December 20, 1910. Neither the special agents, Veatch and Watts, nor the special prosecutor, Mr. Heney, made any report to the heads of their departments respecting the Brumbaugh matter. But, if it be conceded that these officers had the requisite authority to bind the government by their laches—a thing the court

does not subscribe to as law—the knowledge that they have been shown to have had was not of that definite character calculated to put them upon notice of the real fact, and therefore that knowledge of such fact cannot be imputed to them, much less to the government.

As to the question of concealed fraud, but little need be said. The deed given for this claim was withheld from record for the space of nearly three years, and the account of the company with Brumbaugh was so entered as to cover up and disguise its real nature; besides which Brumbaugh consistently denied the fraud for years, nor did he divulge the truth until pressed to the verge. It could not be clearer that the case is one of concealed fraud.

[3] But one other question remains; that is, whether the fact of the majority of the stock in the company having changed hands and being now held by persons who were without knowledge of the fraud at the time of their purchase constitutes a defense to the government's suit. The question is settled by the Linn & Lane Timber Co. Case, supra, in the negative; the court citing Wilson Coal Co. v. United States, 188 Fed. 545, 110 C. C. A. 343.

The prayer of the government will be granted, and the patent annulled, with costs to the government.