For the reasons stated the plea in abatement is stricken out.

STATE *vs.* EDWARD J. FAHEY.

1. STATUTES—LATER ACT, CONTAINING SAME SUBJECT-MATTER AND COMPLETELY COVERING EARLIER ONE, IMPLIEDLY REPEALS IT.

Where later act embraces subject-matter of earlier act and covers it completely, earlier act is repealed, even though it is not expressly repealed by later act.

2. STATUTES—REPEALS BY IMPLICATION NOT FAVORED.

Repeals by implication are never favored, and, unless expressly so provided, one act does not ordinarily repeal another, if both can be construed together as consistent acts.

3. INTOXICATING LIQUORS—ACT PROHIBITING TRANSPORTATION, DELIVERY, AND POSSESSION HELD NOT REPEALED BY LATER ACT PROHIBITING MANUFACTURE, SALE, OR FURNISHING.

The Loose Law, prohibiting transportation, delivery, and possession of more than specified quantities of intoxicating liquor, *held* not repealed by the Klair Law, which prohibits the manufacture, sale, or furnishing of intoxicating liquors.

4. STATUTES—STATUTE IN WORDS OF PRESENT TENSE APPLIED TO FUTURE CONDITIONS.

Where statute is expressed in words of present tense, it will be construed to apply, not only to conditions existing at its passage, but to such as come into existence thereafter.

5. INTOXICATING LIQUORS—LAW PROHIBITING POSSESSION OF INTOXICATING LIQUOR IN PLACES WHERE SALE "IS PROHIBITED" APPLICABLE TO PLACE WHERE SALE SUBSEQUENTLY PROHIBITED.

Loose Law, § 1, *par.* 2, passed in 1917, prohibiting possession of more than one quart of intoxicating liquor in portions of state where sale "is prohibited," is applicable to the city of Wilmington, where sale of intoxicating liquor was prohibited by the Klair Law, passed in 1919.

6. STATUTES—CLEARLY ASCERTAINED INTENT NOT CONTROLLED BY RULES OF CONSTRUCTION.

Rules of construction cannot control plain intent of Legislature, where such intent can be clearly ascertained.

7. INTOXICATING LIQUORS—STATE LAW PROHIBITING POSSESSION OF MORE THAN SPECIFIED QUANTITY HELD NOT REPUGNANT TO EIGHTEENTH AMENDMENT AND VOLSTEAD ACT.

Loose Law, § 1, *par.* 2, prohibiting the possession of more than one quart of intoxicating liquor at one time, *held* not invalid, as repugnant to the Eighteenth Amendment to the federal Constitution and the Volstead Act (U. S. *Comp. St. Ann. Supp.* 1923, § 10138¼ *et seq.*).

*(February* 5, 1924.)

PENNEWILL, C. J., HARRINGTON and RODNEY, J. J., sitting.

*Clarence A. Southerland* and *Leonard G. Hagner,* Deputy Attorneys-General, for the State.

*James Saulsbury* and *Aaron Finger* for defendant.

Court of General Sessions, New Castle County, January Term, 1924.

Motion to quash indictment found under *Chapter* 10, *Volume* 29, *Laws of Delaware,* for illegal possession in New Castle County on the twelfth day of December, 1923, of more than one quart of spirituous liquor; said indictment being No. 29, January term, 1924.

The State admitted that the alleged offense was committed in that portion of New Castle County located within the limits of the City of Wilmington. The defendant moved to quash the indictment on four grounds: (1) That the Loose Law (*chapter* 10, *vol.* 29, *Laws of Delaware*) was repealed by the *Klair Law* (*chapter* 239, *vol.* 30, *Laws of Delaware*). (2) That even if it were not so repealed it did not then and does not apply to the City of Wilmington. (3) That the Loose Law was and is repugnant to the provisions of the Eighteenth Amendment to the Federal Constitution and is therefore void. (4) That the possession clause of the Loose Law (*paragraph* 2, § 1) was and is inconsistent with the act of Congress known as the Volstead Act and therefore cannot be enforced.

HARRINGTON, J., delivering the opinion of the Court:

*Chapter* 10 of *Volume* 29, *Laws of Delaware*, known as the Loose Law, under which this indictment was found, was passed by the Legislature at the 1917 session and was approved by the Governor February 27 of that year. *Paragraph* 2 *of Section* 1 of this act provides:

"It shall be unlawful for any person * * * living, residing or staying in those portions of the State of Delaware where the sale of liquors is prohibited by law * * *. to have in his * * * possession, at any one time, more than one quart of spirituous liquors * * * and any one guilty * * * shall be subject to the same fines and penalties provided for the unlawful sale of liquors in that territory. * * *"

*Paragraph* 4 of the same section prohibits the transportation or delivery of liquor to any person or at any place within the State of Delaware where the sale of liquor is prohibited by law.

[1-3] What is known as the Klair Law (*Chapter* 239, *vol.* 30, *Laws of Delaware*) was passed at the legislative session of 1919 and was approved by the Governor March 21, 1919. That it does not in express language repeal the Loose Law is admitted. The defendant contends, however, .that it was intended to cover the whole subject-matter of prohibition and that the Loose Law is therefore by implication absolutely repealed by it. In support of this contention the defendant cites *State v. Verderamo*, 6 *Boyce* 72, 96 *Atl.* 758, and quotes the following paragraph from it:

"It will not be questioned that where a later act embraces the subject-matter of an earlier act, and covers the same fully and completely, the earlier act is repealed even though it is not expressly and specifically repealed by the later act. The later expression of the legislative will *supersedes* the earlier one and works an implied repeal."

The correctness of the general rule contended for by him cannot be denied. *Husbands v. Talley*, 3 *Penn.* 88, 47 *Atl.* 1009; *State of Delaware*, upon the relation of the Mayor, etc., of *Middletown v. Peverly et al.*, 2 *W. W. Harr.* (32 *Del.*) 443, 125 *Atl.* 421.

Whether this rule is applicable to this case is another question. Repeals by implication are never favored, and unless it is expressly so provided one act does not ordinarily repeal another,

if both, in whole or in part, can be construed together as consistent acts. *Husbands v. Talley, supra; State, etc., v. Peverly et al., supra.* In order to determine this question it is necessary to compare and analyze the two acts. Two of the important sections of the Loose Law have already been referred to.

An analysis of the Klair Law shows that *Section* 3 of that act prohibits the manufacture of intoxicating liquors. It also prohibits the sale, bartering or furnishing of liquors to any person.

*Section* 4 relates to the duties of a person having alcohol in his possession for medical, mechanical, scientific, industrial or other permitted purposes.

*Sections* 6 to 12, inclusive, regulate the sale and the possession for the purposes of sale, by druggists, of wine and of certain other kinds of alcohol for certain specified purposes.

*Section* 12 prevents the possession or sale of any preparations or compounds from which beer or intoxicating liquor, which can be used as a beverage, may be made.

*Section* 24 provides that on complaint that a person is or has been intoxicated, or that liquor is being "kept" in any hotel, store, public building, etc., a subpœna shall issue to compel such "person found intoxicated or other persons aforesaid * * * to testify in regard to the person or persons of whom, and the time when, and the place where, and the manner in which the liquor, producing his intoxication was procured, or other violations complained of," etc.

None of the other sections, with the exception of *Sections* 17 and 24, which will be considered hereafter, need be considered.

It, therefore, appears that the Klair Law prohibits the manufacture, bartering, sale or furnishing of intoxicating liquors while the Loose Law merely prohibits its transportation or delivery, and the possession of more than specified quantities at any one time.

These provisions of the two acts certainly are in no sense inconsistent. It is true that *Section* 4 and *Sections* 6 to 12, inclusive, of the Klair Law relate to the possession of wine and other kinds of alcohol by druggists and other persons for medical, mechanical,

sacramental, scientific and industrial purposes, but there is nothing to indicate any intent to legislate with respect to the legality of the possession of alcoholic liquors outside of the limited class covered by those particular sections.

While the Loose Law also contains certain provisions under which the possession of liquors for manufacturing and scientific purposes may be legal, the prohibition as to the possession of more than one quart for any other purposes in *Paragraph* 2 of *Section* 1 of that act is general.

It may be true that the clause of the Loose Law, covering the possession of liquors for manufacturing and scientific purposes, is repealed by the corresponding clause in the Klair Law, but that in no way affects the question before us. That the Klair Law was not intended to cover and does not cover the whole subject of prohibition legislation in this State, therefore, seems clear.

Any other conclusion would seem to make the provisions of *Section* 16 of the Klair Law useless, if no more.

It will be remembered that this section prohibits the possession of "preparations or compounds" from which intoxicating liquors, which could be used as beverages, could be made.

If the Legislature had intended to repeal *Paragraph* 2 of *Section* 1, the possession clause of the Loose Law, and thereby to permit any one to have any amount of intoxicating liquor in his possession, why was *Section* 16 incorporated in the Klair Law?

Under the construction of the Klair Law, contended for by the defendant, the provisions of *Section* 24 of this act would also seem to fall far short of their apparent purposes.

*Section* 17 of the Klair Law also makes it unlawful for any person to cause or induce any carrier or other person, etc., to carry, transport, or ship any package, trunk or valise containing liquors, without notice as to the true nature of such shipment. It also provides that "failure to notify such carrier shall not be a defense for illegal transportation of such liquor."

If the Legislature intended by the Klair Law to repeal the Loose Law in its entirety, why was this provision inserted, as the only statute of the State of Delaware under which there could

possibly be a prosecution for the transportation of liquor is the Loose Law?

But it is contended that, even if the Loose Law is not repealed, it does not apply to the City of Wilmington. The defendant contends that this is clear from *Paragraph* 2 of *Section* 1 of that act. He bases this contention on the fact that this paragraph makes possession of more than certain quantities unlawful "in those portions of the State   *   *   *   where the sale of liquors is prohibited by law," and in effect argues that the words "is prohibited" were used by the Legislature in the sense of "is now prohibited." He also contends that this contention is strengthened by the clause providing that any one guilty "shall be subject to the same fines and penalties provided for the unlawful sale of liquors in that territory.   *   *   *"

In ascertaining the intention of the Legislature with respect to this question, it is helpful to consider the situation with respect to liquor legislation in this State, both before and after the Loose Law was enacted. *Lewis' Sutherland on Stat. Constr.* § 471.

*Section* 1 of *Article* 13 of the Constitution of 1897 provides:

"The General Assembly may from time to time provide by law for the submission to the vote of the qualified elector, of the several districts of the State, or any of them, mentioned in *Section* 2 of this article, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof; and in every district in which there is a majority against license, no person, firm or corporation shall thereafter manufacture or sell spirituous, vinous or malt liquors, except for medicinal or sacramental purposes, within said district, until at a subsequent submission of such question a majority of votes shall be cast in said district for license. Whenever a majority of all the members elected to each house of the General Assembly by the qualified electors in any district named in *Section* 2 of this article shall request the submission of the question of license or no license to a vote of the qualified electors in said district, the General Assembly shall provide for the submission of such question to the qualified electors in such district at the next general election thereafter."

*Section* 2 of this article divides the State into four districts, namely: The City of Wilmington, Rural New Castle County, Kent County and Sussex County.

*Section* 3 of the same article provided that the General Assembly "shall provide necessary laws to carry out and enforce the provisions of this article, enact laws governing the manufacture

and sale of intoxicating liquors under the limitation of this article, and provide such penalties as may be necessary to enforce the same."

By an election provided for by statute, pursuant to this article of the. Constitution, Kent and Sussex Counties had already voted against the manufacture and sale of intoxicating liquors when the Loose Law was passed, the act providing for a vote on the question (*Chapter* 65, *vol.* 24, *Laws of Delaware*; *Section* 195, *Rev. Code* 1915) also provided for penalties for the manufacture and sale of intoxicating liquors in those counties if the vote cast should be against the licensed sale and manufacture of such liquors.

A little more than a month later and at the same session of the Legislature an act was passed (*chapter* 111, *vol.* 29, *Laws of Delaware*) providing for a vote on the same question in both Rural New Castle County and in the City of Wilmington. This bill was approved by the Governor April 5, 1917.

The result of the vote under this act in Rural New Castle County was against the manufacture and sale of intoxicating liquors; the City of Wilmington, however, voted in favor of continuing its licensed manufacture and sale.

The act under which these votes were taken also provided penalties for the manufacture and sale of such liquors in either of the districts named in it that might vote in favor of the prohibition of such manufacture and sale. By reason of the result of the vote these penalties became effective in Rural New Castle County but not in the City of Wilmington.

In so far as any legislative enactments of the State of Delaware are concerned the situation remained the same until the Klair Law was passed, though the Eighteenth Amendment to the Constitution had been ratified January 29, 1919, and Congress had passed the Volstead Act (*U. S. Comp. St. Ann. Supp.* 1923, § 10138¼ *et seq.*) in October of 1919.

[4] It is well settled that:

"Where a statute is expressed in general terms and in words of the present tense, it will as a general rule be construed to apply not only to things and con-

Statement.

ditions existing at its passage but will also be given a prospective interpretation by which it will apply to such as come into existence thereafter." 36 *Cyc.* 1235.

See, also, *Daniels v. State*, 150 *Ind.* 348, 50 *N. E.* 74; *U. S. v. St. Paul, M. & M. R. Co.*, 225 *Fed.* 27, 139 *C. C. A.* 301; *Charles v. Thornburgh*, 44 *Okl.* 379, 144 *Pac.* 1033; *Barzizas v. Hopkins*, 2 *Rand. (Va.)* 276; *Lindsay v. Allen*, 112 *Tenn.* 637, 82 *S. W.* 171.

This rule is a reasonable one and its general application is admitted by the defendant. He contends, however, that it does not govern the act in question.

There is nothing in the statute or in the surrounding circumstances to indicate that the general rule was not intended to apply and that the word "is" was not used in the prospective or future as well as in the present sense. On the contrary it seems clear that the Legislature contemplated that the sale of liquor might subsequently be prohibited in other portions of, or even in the whole State. Unless this is true why was not the statute expressly confined in its application to Kent and Sussex Counties, which were the only portions of the State where the sale of liquor was then prohibited by law? We have already seen that the same session of the Legislature that passed the Loose Law provided for a vote under *Article* 13 of the Constitution on the question of the prohibition of the licensed manufacture and sale of liquor in both Rural New Castle County and the City of Wilmington.

No express provision was, however, made for prohibiting its possession in those districts in case its manufacture and sale should become unlawful. Is it reasonable to think that the Legislature intended to so discriminate between these districts and Kent and Sussex Counties? The question suggests its own answer. One of the things that the Loose Law evidently intended to prohibit was the possession of more than a specified quantity of liquor in any part of the State of Delaware where the sale of it was then or should thereafter be prohibited by law. The obvious answer to this question therefore is that the Legislature contemplated that the Loose Law would automatically apply in either or both of those districts if the sale of liquor should subsequently be prohibited there.

It may have anticipated that if the sale of liquor became un-
lawful in other portions of the State that it probably would be
brought about by the provisions of *Article* 13 of the Constitution,
but the contemplated result was not confined to that method.

Since the enactment of the Klair Law this Court has not only
repeatedly tried and convicted for the possession of more than one
quart of spirituous liquor at one time in the City of Wilmington,
but it has also held that the Loose Law became effective there
during the period when the National Wartime Prohibition Act
was in force. *State v. Fisher*, 1 *W. W. Harr.* (31 *Del.*) 121, 111
*Atl.* 432.

The War Time Prohibition Act was enacted by Congress
pursuant to the Eighteenth Amendment, but long after the en-
actment of the Loose Law. The Fisher Case, therefore, applied
precisely the same principles with respect to the Loose Law that
the State contends apply here.

[5] From what we have already said, it necessarily follows
that the possession clause of the Loose Law (*Paragraph* 2, § 1)
is applicable to the City of Wilmington and was applicable to that
City when the indictment in this case was found; and since the
paragraph of the Loose Law above referred to provides for the
same penalties for the unlawful possession as for the unlawful
sale of liquor, and since the Klair Law makes it unlawful to sell
liquor in the City of Wilmington, as well as in other portions of the
State of Delaware, it also necessarily follows that the penalties
for the violation of the Loose Law in that city are provided by the
Klair Law.

The cases cited by the defendant are of two classes.

First. Cases where rules of strict construction have been
applied in ascertaining the meaning of penal acts where the mean-
ing of such acts is doubtful. *Hall v. State*, 20 *Ohio* 8; *Com. v.
Exler*, 243 *Pa.* 155, 89 *Atl.* 968; 2 *Lewis' Sutherland on Statutory
Construction*, § 965.

Second. Cases holding that "as a rule the adoption of a
statute by reference is construed as an adoption of the terms of
such statute as it existed at the time the adopting act was passed,

unaffected by any subsequent modification or repeal of the statute adopted." 36 *Cyc. p.* 1152; *Lewis' Sutherland on Stat. Constr. vol.* 2, § 405.    See, also, *Furbish v. County Com.*, 93 *Me.* 117, 44 *Atl.* 364; *Postal Tele. Cable Co. v. So. Ry. Co. (C. C.),* 89 *Fed.* 190; *Kendall v. U. S.,* 12 *Pet.* 625, 9 *L. Ed.* 1181.

Neither of these classes of cases control this case.

[6] It is obvious that no rules of construction can control the plain intent of the Legislature where such an intent can be clearly ascertained. *Lewis' Sutherland on Statutory Constr.* § 528.

In addition to what we have already said, as to the legislative intent with respect to the Loose Law, *Section* 12 of that act provides that it shall be deemed to be an exercise of the police powers and that all of its provisions "shall be liberally construed."

For this reason also, the usual rules applicable to the constructions of penal statutes when the legislative intent is doubtful, do not apply.    See *Lewis' Sutherland on Statutory Construction,* § 684; *Seal v. State,* 13 *Smedes & M. (Miss.)* 286.

The obvious answer to the cases cited by the defendant in the second class is, that as no statute prohibited the sale of liquor in the City of Wilmington when the Loose Law was enacted, they are not applicable to this case.

[7] The defendant further contends, however, that *Paragraph* 2 of *Section* 1 of the Loose Law is void, or at least that it cannot now be enforced because it is inconsistent with the Eighteenth Amendment to the Federal Constitution and with the Volstead Act.

The Eighteenth Amendment provides:

"*Section* 1.    After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"*Section* 2.    The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

In order to enforce this amendment, Congress subsequently passed the Volstead Act (41 *Stat.* 305, *c.* 85, *U. S. Comp. Stat.*

§ 10138½t; 1923 *Supplement, vol.* 4, *p.* 3607), which, as we have already stated was approved by the President in October of the same year that the Klair Law was passed. Pursuant to the Eighteenth Amendment, the Volstead Act prohibits the manufacture and transportation and sale of liquor, but it not only does not, as a general proposition, prohibit its possession, but title 2, § 33, expressly authorizes the possession of liquor in certain cases; for instance, in private dwellings for personal and family use, and for the use of guests. The possession of liquor by any person not authorized by the Act is, however, made *prima facie* evidence that it is being kept for the purpose of sale, etc.

But that does not settle the question before us. The purpose of the Eighteenth Amendment was to enforce prohibition as a national policy. *U. S. v. Lanza*, 260 *U. S.* 377, 43 *S. Ct.* 141, 67 *L. Ed.* 314. That any state legislation repugnant to it is void must, of course, be conceded. *R. I. v. Palmer*, 253 *U. S.* 250, 40 *S. Ct.* 486, 588, 64 *L. Ed.* 946; *U. S. v. Lanza*, 260 *U. S.* 377, 43 *S. Ct.* 141, 67 *L. Ed.* 314. As the Volstead Act was enacted to carry out the provisions of the Eighteenth Amendment, the solution of this question depends entirely upon the construction of *Section* 2 of that Amendment. The State contends that the defendant admits that the test as to whether state legislation is repugnant to the Amendment, or whether it is "appropriate legislation" "to enforce" it under the "concurrent power" given the states by this section, depends upon whether such legislation is appropriate to enforce the provisions of the Amendment. *R. I. v. Palmer*, 253 *U. S.* 350, 40 *S. Ct.* 486, 588, 64 *L. Ed.* 946; *Vigliotti v. Pa.*, 258 *U. S.* 403, 42 *S. Ct.* 330, 66 *L. Ed.* 686.

*Article* 10 of the Federal Constitution provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states are reserved to the states respectively, or to the people." Under this article, prior to the Eighteenth Amendment, the police powers were vested in the several states, and that the Loose Law is an exercise of the police powers of this State seems clear. *State v. Moore*, 36 *Idaho* 565, 212 *Pac.* 349, and cases hereinafter cited.

That *Section* 2 of the Eighteenth Amendment was intended to reserve to the several states their rights under the police powers, and was not intended as a grant of power, also seems clear. *Vigliotti v. Pa.*, 258 *U. S.* 403, 43 *S. Ct.* 330, 66 *L. Ed.* 686; *U. S. v. Lanza*, 260 *U. S.* 377, 43 *S. Ct.* 141, 67 *L. Ed.* 314; *State v. Moore*, 36 *Idaho* 565, 212 *Pac.* 349.

In *U. S. v. Lanza, supra*, in referring to *Section* 2 of the Eighteenth Amendment, the Supreme Court said:

"Each state, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition.  *  *  *  To regard the amendment as the source of the power of the states to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the Federal Constitution, chiefly the commerce clause, each state possessed that power in full measure prior to the Amendment, and the probable purpose of declaring a concurrent power to be in the states was to negative any possible inference that in vesting the national government with the power of country wide prohibition, state power would be excluded.  *  *  *  To be sure, the first section of the Amendment took from the states all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws, not inconsistent with it. Such laws derive their force, as do all new ones consistent with it, not from this Amendment, but from power originally belonging to the states, preserved to them by the Tenth Amendment."

That state legislation prohibiting the possession of liquor is an aid to prohibition and not inconsistent with or repugnant to it seems clear from the standpoint of reason as well as authority. *Powell v. State*, 18 *Ala. App.* 101,90 *So.* 138; *Jones v. Hicks*, 150 *Ga.* 657, 104 *S. E.* 771, 11 *A. L. R.* 1315; *State v. Johnson*, 61 *Utah* 256, 212 *Pac.* 67; *State v. Moore*, 36 *Idaho* 565, 212 *Pac.* 349.

*State v. Moore, supra*, is particularly important, as it not only directly passes on all the questions presented by this branch of this case, but it was affirmed by a per curiam opinion handed down by the Supreme Court of the United States March 3, 1924, 264 *U. S.* 569, 44 *S. Ct.* 333, 68 *L. Ed.*—.  The opinion of the Supreme Court was largely based on *Vigliotti v. Pa. and U. S. v. Lanza, supra*.  It is true that *Hall v. Moran,* 81 *Fla.* 706, 89 *So.* 104; *Johnson v. State*, 81 *Fla.* 783, 89 *So.* 114; *Spooner v. Curtis*, 85 *Fla.* 408, 96 *So.* 836, hold that *Section* 2 of the Eighteenth Amendment is a grant of power to the states, and that the Volstead Act is, therefore, controlling.  It is a sufficient answer to say that

these cases have not been followed either by the state courts or by the Supreme Court of the United States.

· For the reasons above given our conclusion is that *Paragraph 2* of *Section* 1 of the Loose Law was not repealed by the Klair Law; and that it is valid, enforceable and applicable to the City of Wilmington. The defendant's motion to quash the indictment is, therefore, refused.