BOARD OF WATER COMMISSIONERS OF THE CITY OF SPRINGFIELD

*v.*

THE PEOPLE *ex rel.* City of Springfield.

*Filed at Springfield May 11, 1891.*

1. SPRINGFIELD WATER WORKS—*under control of city council.* The act approved February 21, 1861, entitled "An act to incorporate the Springfield-Water Works Company," was an amendment to the charter of the city of Springfield, and not a separate and independent act for the creation of a new corporation, with power to act independently of the city council.

2. SAME—*organization of city of Springfield under general law—effect on act to incorporate water works company.* By organizing under the general Incorporation law of 1872, the city of Springfield, through its council, became invested with the full and complete power over the water works of the city, to the exclusion of all other agencies; and the act of 1861, to incorporate the Springfield Water Works Company, being inconsistent with the general law, is no longer applicable to that city, and is repealed.

3. The general Incorporation law for cities and villages expressly provides that the provisions of that act, upon a change of the organization of a city from its original organization to organization under that act, shall be applicable to such city, and that "all laws in conflict therewith shall no longer be applicable."

4. It would seem that the powers given by the general Incorporation law to the city council for the management and control of water works are self-executing, and may be rightfully exercised without the passage of an ordinance assuming control over the subject.

5. STATUTES—*when repugnant, later repeals the earlier.* Where two statutes are so inconsistent and repugnant that they can not reasonably be reconciled, the later statute will operate as a repeal of the earlier one.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. CONNOLLY & MATHER, and Messrs. PALMER & SHUTT, for the appellant:

The act of 1861, relating to the water works of the city, does not purport to be an amendment of the city charter. It is a complete, independent, disconnected act of the legislature. If it is a distinct entity, a change of the city's charter did not operate to abrogate this special law.

This court has said, the repeal of a statute by implication is never permitted if it can be avoided on any reasonable hypothesis. *Bruce* v. *Schuyler,* 4 Gilm. 221; *Supervisors* v. *Campbell,* 42 Ill. 490; *Hume* v. *Gassett,* 43 id. 297; *Chicago* v. *Quimby,* 38 id. 274; *People* v. *Barr,* 44 id. 198; *Hunt* v. *Railway Co.* 121 id. 644.

In one case, at least, this court has announced what it terms a still more important principle, viz., "that a subsequent general law will not, by implication, operate as a repeal of a special law on the same subject, though inconsistent with it." *Ottawa* v. *LaSalle County,* 12 Ill. 339; *Butz* v. *Kerr,* 123 id. 662.

Mr. NOAH H. TURNER, Messrs. PATTON & HAMILTON, and Messrs. CONKLING & GROUT, for the appellee:

The board of water works was part of the city government under the old charter, and the provisions of the water works amendment to the charter are inconsistent with the general law.

While we do not dispute the authorities holding that repeals by implication are not favored, and that the courts will, if possible, give effect to each of two seemingly repugnant laws, yet we further submit that if the later act covers the whole subject of the first, and embraces new provisions showing it was intended as a substitute for the first, it operates as a repeal of it. *Culver* v. *Third Nat. Bank,* 64 Ill. 528; *United States* v. *Tyner,* 11 Wall. 88; *Bartel* v. *King,* 12 Mass. 537.

The evident object of the general Incorporation act was to assimilate the charters of municipal incorporations in this State which wished to adopt its provisions. *Guild* v. *Chicago,* 82 Ill. 477; *City of Cairo* v. *Bross,* 101 id. 481.

Mr. Justice Baker delivered the opinion of the Court:

This was an information in the nature of a *quo warranto,* prosecuted in the Sangamon circuit court by the State's attorney, on the relation of the city of Springfield, against the Board of Water Commissioners of the City of Springfield, composed of Rheuna D. Lawrence, Obed Lewis and Hiram O. Bolles, calling upon it to show by what authority it exercises the liberties, privileges and franchises of a board of water commissioners of the city of Springfield. The fourth count of the information fully sets forth the case of the relator, and the pleas of the defendant to the first, second and third counts of the information fully set forth and exhibit the title and defense of the defendant below, appellant here. The circuit court overruled a demurrer to the fourth count, and sustained the demurrer filed to the pleas to the first, second and third counts. Appellant stood by its demurrer to the fourth count, and by its pleas to the other counts, and thereupon judgment of ouster, and for a fine of one dollar and for costs, was rendered against it.

Appellant justifies under an act of the legislature, approved February 21, 1861, entitled "An act to incorporate the Spring-

field Water Works Company." (Private Laws of 1861, p. 285.) The claim is, that said act was a complete, independent and disconnected act of the General Assembly; that it was not an amendment to and did not become a part of the charter of the city of Springfield; that it created certain persons therein named, and their successors in office, a body politic and corporate, by the name and style of the "Board of Water Commissioners of the City of Springfield," with the powers designated in said act, and with the right of perpetual succession; that the object of the act was a permanent and continuing one, and that the subsequent organization, in April, 1882, of the city of Springfield under the general act for the incorporation of cities and villages (1 Starr & Curtis' Ann. Stat. 452,) did not have the effect to repeal said act of 1861, or to render its provisions "no longer applicable."

Prior to the incorporation of the city under the general law, its charter did not consist of one act of the legislature, only, but of a number of acts. The principal act was that of March 2, 1854, and in addition thereto there were the acts of February 14, 1855, (Private Laws, 75,) of February 18, 1857, (Private Laws, 1229,) of February 16, 1857, (Private Laws, 1050,) of February 21, 1861, (Private Laws, 277,) of March 29, 1869, (2 Private Laws, 241,) of February 18, 1859, (Private Laws, 269,) creating Oak Ridge cemetery, of March 27, 1869, (2 Private Laws, 239,) creating the board of education, and perhaps other acts. Each of the acts above mentioned purported in its title to be an amendment to the city charter. The Springfield Water Works act, however, did not purport in its title to be an amendment to said charter. We think, though, after a careful examination of its provisions, that it was, in legal effect and to all intents and purposes, an amendment or addition to the city charter. Its title, "An act to incorporate the Springfield Water Works Company," was somewhat misleading. That which it did in fact and in the body of the act incorporate was "a board of water commissioners for the city

of Springfield," to be known by the name and style of the "Board of Water Commissioners of the City of Springfield." On the day of the approval of the act, another act was also approved, which latter act made provision for the submission of the Water Works act to a vote of the qualified voters of the city of Springfield, at a special election, the city clerk to give notice of said election, and the city council to designate the judges and clerks and the voting places in each ward, and the ballots to be canvassed and returned in like manner as votes for city officers of said city, and also provided that the Water Works act should not take effect and should in nowise be in force unless approved by a majority of the voters.

The three persons who were to constitute the first board of commissioners were designated in the act to hold their offices for three, four and five years, respectively, they to decide by lot their respective terms. The act required them to notify the city council, in writing, of the result of such casting of lots, which was to be entered of record on the journals of the city council. Their successors were to be elected by the qualified voters of the city, at the regular city elections for the election of mayor and other city officers. In case of a vacancy in the board, the remaining commissioners were to nominate a qualified voter of the city to fill the same, and such person, if the nomination was confirmed by the city council, was to act until the next regular election. The city council was to fix the salaries of the commissioners and the salary of the superintendent appointed by the board, and the commissioners were required to report, in writing, at a fixed time in each year, to the council, the nature and extent of the duties assigned to each commissioner. Said commissioners were required to attend to all matters relative to supplying the city of Springfield with water from the Sangamon river, and power was given them, and it was made their duty, to furnish a full supply of water for public and private use in said city. Their power to raise money was conditioned on its being deemed expedient

by the city council, and all money was required to be borrowed upon the credit of the city, and city bonds were to be issued therefor, under the corporate seal of the city, and signed by the mayor and city clerk, but only upon authority given by the city council, by a vote of a majority of all the aldermen by law authorized to be elected. It was made the duty of the city clerk to register these bonds "in the same manner as the other indebtedness of the city is registered." The warrants for the collection of water rents were to be directed to the marshal or a constable of the city, and it was made the duty of the board to report and return unsatisfied warrants and delinquent property to the city council, and it was provided the city council should take the same proceedings for collection as were provided by the charter and ordinances of the city for the collection of unsatisfied sidewalk assessments. The rules and regulations of the board in respect to the use of water were required to be reported to the city council, and the council was thereupon to pass an ordinance establishing such rules and regulations, and provide penalties for their violation. The act imposed the duty upon the board of making, under oath, a semi-annual report of their stewardship to the city council, and the same was required to be entered of record by the city clerk. The investment of surplus funds from water rents, etc., over and above current expenses authorized by the act, could only be made "with the approval of the mayor and committee of finance of the city council." The members of the city council were prohibited from being interested in any contract made by the board, or in the purchase of any materials to be used. Provision was made for the removal from office of the commissioners, or either of them, upon a petition, to be voted by a majority of all the members of the city council, and in case of such removal from office the city council was given power to fill the vacancy or vacancies. It was made the duty of the city council to levy special taxes, if necessary, to pay interest or principal of the bonds above mentioned.

The members of the city council were prohibited from making use of, or borrowing for their private benefit, any of the funds belonging to the commissioners, or from receiving any interest or profit whatsoever on account of the deposit of such funds. It was made the duty of the finance committee, or of some other committee appointed by the city council, to examine, at least once in three months, the register of amounts paid by the board of commissioners, and their cash accounts and returned checks and drafts, and also made the duty of the finance committee, or a special committee appointed by the city council for that purpose, at the times of the presentation of the semi-annual reports of the board to said council, to make thorough examinations of the books, accounts and vouchers of the board, and report to the city council, in writing, the results of such investigations. It was also required that all contracts made by the commissioners should be in writing and executed in duplicate, one copy to be filed and preserved by the city clerk among the files of his office. The act recited that a contract for the building of the Springfield water works had already been entered into between the city of Springfield and Ennis & Eastman, and it provided that nothing in the act contained should interfere with or invalidate said contract, or release or impair any of its obligations or provisions. The commissioners were required to give bonds to the city, in such sums and with such sureties as the city council should determine, for the performance of their duties, and the council was given power to increase the amounts of such bonds, and to require the superintendent to give such bond as it deemed necessary and expedient. And the city council was given authority to pass such ordinances, with appropriate penalties, as it deemed necessary for the preservation of the property and the water. On February 21, 1863, so much of the Springfield Water Works act as required the election of commissioners at specified times was repealed, and it was provided that the city council of the city of Springfield might order an election for

such commissioners "when said council may deem it expedient." Private Laws of 1863, p. 165.

This partial analysis of the act of incorporation of the "Board of Water Commissioners of the City of Springfield" shows that said board was not such an independent and distinct corporate existence and separate legal entity as that it formed no part of the municipal government of the city of Springfield, and could not be affected by subsequent changes made by the General Assembly in the charter of the city. The act was, in substance and in fact and in legal effect, an addition to the charter of the city of Springfield, and invested the city with new and additional powers. It created a board of water commissioners as a department of the municipal government of the city. The whole scope and intent of the act indicate that this board was but a part and parcel of the city government. The mere fact that the legislature saw fit, for purposes of convenience and of administration, to give it a corporate existence and invest it with certain corporate powers did not prevent it from being simply a branch or an agency, created for a special purpose, of the municipal government. Without the active co-operation of the city council it would have been wholly unable to effect the objects of its creation.

Did the organization, in 1882, of the city of Springfield under the general Incorporation law for cities and villages, work a repeal of the Springfield Water Works act of 1861, or render said act "no longer applicable?" Section 6 of article 1 of said general law provides, that from the time of the change of the organization of any city or town from its original organization to its organization under the general act, the provisions of said general act shall be applicable to such cities and villages, and all laws in conflict therewith shall no longer be applicable, but that all laws or parts of laws not inconsistent with the provisions of the general act shall continue in force and applicable to any such city or village, the same as if such change of organization had not taken place. Was the

Springfield Water Works act of 1861 a law in conflict with the general Incorporation act, under which the city was organized in 1882?

The Water Works act gave to the Board of Water Commissioners of the City of Springfield the control and regulation of the water works and of the property connected therewith, and power to enter into contracts in respect thereto, make expenditures therefor, and elect a superintendent thereof. It gave them custody of the water works funds, and power to disburse the same. It gave them authority to adopt rules and restrictions regulating the use of the water. It invested them with authority to determine the basis upon which payments were to be made for water used, to assess as water rents such amounts as they should deem equitable, and collect the rents so assessed. Section 3 of article 10 of the general Incorporation act, under which the city is now organized, gives to the city council power to make all needful rules and regulations concerning the use of water supplied by the water works; power to do all acts and make such rules and regulations for the construction, completion, management or control of the water works as it may deem necessary and expedient; power to do all acts and make such rules and regulations as it may deem necessary and expedient for the levying and collecting of water taxes, rates or assessments; and power to levy or assess water taxes, rents, rates or assessments.

It is manifest that the powers donated by the water works charter of 1861 to the Board of Water Commissioners of the City of Springfield are substantially the same powers that are given by the general Incorporation act to the city council of the city of Springfield. The powers donated to each could not be exercised by each without conflict. The discretionary and exclusive powers originally conferred upon the commissioners can not co-exist with the discretionary and exclusive powers, in respect to the same subject matters, afterwards

vested in the city council. The continuance of them in the one body is inconsistent with the existence of them in the other.

There is also a conflict between the two acts in this: that by the amendment of 1863 to the Water Works act, the three commissioners are to be elected at such times as the city council may deem expedient, and are to remain in office for an indefinite length of time, whereas, under sections 2 and 3 of the general act the terms of office of such officers could not exceed two years. There is also a conflict between the acts in this: that by the general law the city council is given complete control and management of the water works, and power to provide for a supply of water for the purposes of fire protection, and authority to provide implements for the prevention and extinguishment of fires, whereas, by section 15 of the Water Works act the commissioners alone have the power to construct hydrants for the extinguishment of fires, and regulate their sizes and capacities and fix their localities. There are other inconsistencies between the two acts, but it is unnecessary to specify them.

The rule of law is, that where two statutes are so inconsistent and repugnant that they can not reasonably be reconciled, then the later statute will operate as a repeal of the earlier statute. But it is not necessary here to rely upon that general principle of the law. The general Incorporation act itself provides, in express terms, that the provisions of that act, upon a change of the organization of a city from its original organization to organization under that act, shall be applicable to such city, and that "all laws in conflict therewith shall no longer be applicable."

It is urged that the Board of Water Commissioners for the City of Springfield is but an agency of the city government, created for a special purpose, and that the functions of the board do not conflict with the powers of the city council. The board was an agency designated by the State, and the State afterwards authorized the city council to manage and control

the water works, and empowered it (the city council) to do all acts and make such rules and regulations as it (the city council) deemed necessary or expedient in respect thereto. The city council, therefore, has the right to choose its own means and select its own servants and agents.

It is insisted, that even though the two acts are inconsistent with each other, yet that, since the act of 1872 is a general law and the law of 1861 is a special law, the principle that a subsequent general law will not, by implication, operate as a repeal of the special law on the same subject, is decisive of the case, and the cases of *Butz et al.* v. *Kerr*, 123 Ill. 659, and *Ottawa* v. *LaSalle County*, 12 id. 339, are cited in that behalf. The doctrine of those cases has no application to the suit at bar. Here, there is no matter of repeal by implication alone. Here, the express provision of the statute is, that the provisions of the general law "shall be applicable," and that "all laws in conflict therewith shall no longer be applicable." Besides this, when a majority of the voters of the city, at an election lawfully held, voted in favor of organization under the general law, it was, in legal effect, the adoption by the city of said general law as the special charter of said city. To hold that, notwithstanding the result of such election, the provisions of the prior special act or charter, even if inconsistent with the general law, were still in force, would render the election wholly inoperative and but an idle ceremony, be subversive of the legislative intent and of the manifest policy of the law, and lead to results palpably absurd. The evident purpose of the general Incorporation act was to assimilate the charters of municipal corporations in this State, and place them, when of the same grade, upon a uniform and common footing with respect to their corporate powers and the manner of exercising them. *Guild* v. *City of Chicago*, 82 Ill. 477; *City of Cairo* v. *Bross*, 101 id. 481.

In our opinion, the arguments of counsel based upon the act of 1873, (1 Starr & Curtis' Stat. 544,) and the act of

May 27, 1881, (1 Starr & Curtis' Stat. 546,) throw but little, if any, light on the question here at issue.   We deem it unnecessary to discuss in detail the points thus made.

It would seem that the powers given by the general act to the city council for the management and control of the water works are self-executing, and that the passage of an ordinance assuming such control was not essential to the maintenance of this suit.    But if this were otherwise, the information sets up that on the 6th day of May, 1889, the city council adopted such an ordinance, and that, upon demand made, the board of commissioners refused to comply with its provisions.

The views expressed in this opinion are in conformity with the decisions of this court in *Sheridan et al.* v. *Colvin et al.* 78 Ill. 237, *The People ex rel.* v. *Brown,* 83 id. 95, *City of Cairo* v. *Bross,* 101 id. 475, and *Crook* v. *The People ex rel.* 106 id. 237.

The judgment of the circuit court was right.   It is affirmed.

*Judgment affirmed.*