THE STATE OF DELAWARE upon the relation of THE MAYOR AND COUNCIL OF MIDDLETOWN, a municipal corporation, existing under the laws of the State of Delaware, *vs.* GEORGE V. PEVERLY, DORSEY W. LEWIS, ABRAHAM FOGEL, PURNELL L. McWHORTER and WARREN S. P. COMBS.

1.  STATUTES—LEGISLATIVE INTENT CONTROLLING ON ISSUE OF REPEAL BY IMPLICATION.

In determining question of repeal by implication, legislative intent controls.

2.  STATUTES—ENACTMENT OF GENERAL SYSTEM OF GOVERNMENT OR COMPLETE REVISION AND CONSOLIDATION OF PREVIOUS STATUTES EVIDENCE OF INTENT TO REPEAL FORMER ACTS.

Enactment of general system of government complete in itself, or revision of previous statutes, covering entire subject, and consolidating them, especially with new provisions, in single complete act, is evidence of legislative intent to repeal former acts.

3.  MUNICIPAL CORPORATIONS—ACT CREATING BOARD OF LIGHT AND WATER COMMISSION HELD IMPLIEDLY REPEALED BY REINCORPORATION ACT.

19 *Laws Del. c.* 745, amending 19 *Laws Del. c.* 242, by creating Middletown Board of Light and Water Commission, with duties prescribed by amended act with respect to light and water supply, *held* impliedly repealed by 33 *Laws Del. c.* 128, reincorporating town and vesting control of light and water plants in mayor and council.

*(March 5, 1924.)*

PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*Martin B. Burris* and *William S. Hilles* for plaintiff.
*Herbert H. Ward* (of Ward, Gray and Neary) for defendants.

Case certified to the Court in Banc from the Superior Court for New Castle County at the January Term, 1924, being No. 123 of that term.

Hearing before the Court in Banc under agreement that the decision of that Court should be final.

PENNEWILL, C. J., delivering the opinion of the Court:

The sole question raised in this case is whether *Chapter* 128, *Volume* 33, *Laws of Delaware*, entitled "An Act to Reincorporate the Town of Middletown," repeals the prior acts relating to the incorporation of the town, and particularly *Chapter* 745, *Volume* 19, *Laws of Delaware, entitled, "An Act to Amend Chapter 242, Volume* 19, *of the Laws of Delaware,"* entitled *"An Act to Provide for the Lighting of Middletown."*

An answer to that question will determine whether the defendants, who claim to be the Board of Light and Water Commission of said town, are legally authorized to so act, or have usurped the power they claim to possess. The plaintiff claims that the defendants have usurped such power, and seeks by *quo warranto* proceeding to oust them.

The material facts to be considered by the Court are the various acts of the Legislature pertaining to the town of Middletown, beginning with the original incorporation act passed in 1861, *Chapter* 36, *Volume* 12, *Laws of Delaware*, and ending with the reincorporation act passed in 1923, *Chapter* 128, *Volume* 33.

The original act conferred upon the corporation it created the usual powers conferred upon municipal corporations, including certain taxing powers, certain powers relating to streets, and certain police powers. *Section* 16 provided:

"That the commissioners, or a majority of them, shall have the authority to employ the money in the treasury of the town for general improvement and benefit and ornament of the said town as they may deem advisable."

There were many acts passed by the Legislature having some relation to the town of Middletown, between the original act and the final act of reincorporation passed in 1923, but some of them have no bearing on the present issue. The only acts that seem

to be at all material, are the following, and only two or three of them are sufficiently material to warrant more than a brief reference.

The first effective legislation looking toward the creation of facilities for furnishing light and water to the citizens of Middletown appears to be *Chapter* 158, *Volume* 18, *Laws of Delaware,* passed February 10, 1887. By this statute and three others to which reference will be made, powers were conferred upon the corporation to borrow money for the purpose of erecting light and water works, and a Board of Light and Water Commission, was created by the act of 1893, which the defendants claim still exists, and of which they claim to be members legally entitled to act.

By said *Chapter* 158, *Volume* 18, and by *Chapter* 643, *Volume* 18, passed March 19, 1889, "the town commissioners of the Town of Middletown" were authorized to borrow a total of sixteen thousand dollars, issue bonds of the corporation therefor, and denote the proceeds thereof for the erection of water works. The proceeds were to be kept separate from the other moneys of the town. Five persons were appointed water commissioners, and authorized, with the proceeds of such bonds, to erect water works and lay pipes to supply the town with water, to acquire adequate land for such purpose, and if necessary by condemnation proceedings. Upon the completion of the water works, said water commissioners were directed to turn over the same to the town commissioners, and to render an account of their use of the proceeds of the bonds. The town commissioners were authorized:

"To employ proper persons to operate said water works, and shall fix their compensation by ordinance; and in like manner shall fix the rent or rents which private consumers of water shall pay, and shall have all the powers to collect such rents, as collectors of county taxes now have, to collect such taxes."

By an act passed in 1891, entitled "*An Act to Provide for the Lighting of Middletown,*" *Chapter* 242, *Volume* 19, the town commissioners were given authority to borrow a sum not exceeding ten thousand dollars to be used for lighting the town, and for this purpose the commissioners were given authority to establish an

Opinion.

electric light plant and conductors; to erect gas works and lay pipes for the lighting of the town; to acquire necessary land therefor; to purchase any electric plant with the appurtenances; to employ proper persons to operate said works so erected or purchased, and fix their compensation by ordinance, and fix the rent or rents which users of the lights or consumers of the gas shall pay, and have all the powers to collect such rents as they now have to collect water rents.

A statute passed February 21, 1893, entitled "*An Act to Amend Chapter 242, Volume 19, Laws of Delaware*," being *Chapter 745* of *Volume* 19, recites that the sixteen thousand dollars authorized to be borrowed by the town, by *Chapter* 158, *Volume 18*, and *Chapter* 643, *Volume* 18, had been expended in accordance with said acts, and that pursuant to *Section* 7 of *Chapter* 242 of *Volume* 19 a town election had been held, at which the taxpayers voted to authorize the town commissioners to borrow the sum of ten thousand dollars upon the bonds of the town, and to expend the same to equip the town with light. The statute further recites that:

'It is the desire of the citizens, taxpayers of said Middletown, to embrace in a separate board of commissioners the management and control of their works for the supply of light and water and all matters thereto pertaining."

*Section* 2 creates and appoints five persons a "Board of Light and Water Commission," prescribes their terms of office, the election of their successors, the filling of vacancies, the qualification of voters at such election, and the method of calling and holding such election. *Section* 3 provides for the organization of the Board of Light and Water Commission by the election of a president, secretary and treasurer.

Quoting from defendants' brief:

"By *Section* 1 of the statute the town commissioners are directed to prepare and execute the bonds for ten thousand dollars authorized by *Chapter* 242, *Vol.* 19, *Laws of Delaware*, and thereupon to 'place the bonds hereby authorized to be issued, as soon as prepared and printed, in the hands and custody of the Board of Light and Water Commissioners hereinafter provided for, who shall negotiate the sale and delivery of the same, and the money, the proceeds of the sale of said bonds, shall be deposited with the treasurer of the Board of Light and Water Commissioners, to be used for the purpose of carrying into effect the provisions of this act, and not otherwise.'

"By *Section* 6 the Board of Light and Water Commission were authorized and empowered to do everything necessary to locate, erect, equip and operate the proposed lighting plant, and to maintain and operate the existing system of water supply in connection with the proposed lighting plant, conferring upon them all necessary powers for that purpose.

"*Section* 2 further provides that the duties of the Board of Light and Water Commission 'shall be such as are prescribed by the Acts hereinbefore recited (being *Chapter* 242, *Volume* 19, and *Chapters* 158 and 643, *Volume* 18, *of the Laws of Delaware*), for the commissioners of the Town of Middletown, so far as relates to the erection and management of the light and water supply of said town.'

"By *Section* 5 the Board of Light and Water Commission are required, at stated intervals, to furnish to the town commissioners a statement of their expenditures for the construction of the light plant.

"By *Section* 2, it is further provided that upon the organization of the Board of Light and Water Commission they shall notify the town commissioners, and that thereupon the town commissioners 'shall turn over to the Board of Light and Water Commission the entire water works, fixtures and appurtenances, together with all water rents to accrue after that date, all money collected for the same and unexpended, maps, drawings, payrolls, tools, materials, fuel on hand, with an inventory of the same, all estimates, papers, correspondence, contracts, and all and every matter or thing pertaining to said water works and belonging thereto, which is the property of the Town of Middletown.'

"The following duties, powers, rights and privileges were imposed and conferred upon the Board of Light and Water Commission, and their officers so constituted by the act:

"(a) The president of the Board of Light and Water Commission was authorized to sign all orders on the treasurer of the Board of Light and Water Commission for expenses for the construction, management and operation of the light and water plants as they were approved by the Board. He was directed to sign all contracts and notices, and turn over to his successor all books and papers belonging to the Board of Light and Water Commission (*Section* 4).

"(b)    The secretary was directed to keep an accurate record of all business transacted by such commissioners, to attest all orders of the treasurer, and other papers signed by the president (*Section* 4).

"(c)    The treasurer of the Board of Light and Water Commission had custody of all money arising from the sale of bonds and derived from light and water rents and other sources. He was required to keep a separate and accurate account of money received and disbursed by him for the light and for the water plants, and of the revenue arising from each, and to make an annual report in detail, of each to the town commissioners; at the expiration of his term he was required to turn over to his successor all moneys, accounts, books, papers and property in his possession. The treasurer, or a collector appointed by the Board, was authorized to collect all rents, and to have the same authority as is conferred upon collectors of school rates.

"(d)    The treasurer was required to give a bond for the faithful performance of his duties. The secretary and treasurer were to receive such compensation as the Board of Light and Water Commission might allow (*Section* 4).

"(e)    The Board of Light and Water Commission were required to grant to all persons whomsoever the privilege of using the light and water in such manner and on such terms and conditions as to it might seem just and proper (*Section* 7).

"(f)    The Board of Light and Water Commission were required to pass and adopt such rules and regulations touching such light and water, its distribution through the town and the regulation of the use of water in case of fires, and the general management and control of the light and water supply, as to such Board should at any time seem most expedient (*Section* 7).

"(g)    The Board of Light and Water Commission were required to collect all light and water rents.  The collector of light and water rent was given all the powers conferred by law upon collectors of school taxes (*Section* 7).

"(h)    All sums due by residents for the use of light and water were made liens upon the property where such light and water were used, with power to collect the same by law from such property (*Section* 7).

"(i)    The Light and Water Commission were required to apply all water rents and other revenues derived from the water works, and all revenue from the light to the payment of expenses of properly keeping up and operating such water and light works, and to pay over the surplus to the town commissioners, in February of every year; the town commissioners were required to apply such surplus for the payment of interest on water and light bonds, and for their redemption (*Section* 8).

"(j)    If at any time the revenue from light and water should prove insufficient to conduct and operate the light and water works, the Board of Light and Water Commission had authority and power to draft on the town commissioners to meet such contingency, who were required to honor such drafts out of a special fund provided for (*Section* 8).

"(k)    The town commissioners were required to pay at a certain specified rate for street lighting, and for water, and supply fire plugs out of the general funds of the town (*Section* 8).

"(l)    For all expenditures for supplies or on contracts exceeding the sum of fifty dollars, the Board of Light and Water Commissioners were required to advertise, inviting sealed proposals for the same, except in case of an accident, when the Board of Light and Water Commission was authorized to make repairs at their discretion (*Section* 12).

"By *Section* 13 of the act, all acts or parts of acts inconsistent with the act were thereby repealed."

## Quoting from plaintiff's brief:

"In nineteen hundred and twenty-three the Legislature passed an act, entitled, 'An Act to Re-incorporate the Town of Middletown,' *Chapter* 128, *Volume* 33, *Laws of Delaware.*

"*Section* 2 of this act provided for a new election of a mayor and four councilmen, who were to comprise the Mayor and Council of the town, and provided for annual elections thereafter.

"By *Section* 3 of the act, the Mayor and Council, thus elected, was created a body politic, and was given as a municipal corporation, among others, the following powers:

"'To acquire, or erect public buildings for municipal purposes, and to regulate and control the management of the same.'

"'The jurisdiction and control over the squares, streets and alleys, sidewalks, crossings and highways to extend from building line to building line;

"'To supply said town and its inhabitants with water and to protect the water to be used from contamination;

"'To provide for the acquisition or erection and maintenance of such works as may be necessary or convenient for supplying water, and to fix, alter, regulate and control the price and use of water so supplied;

32 Del.]     STATE vs. PEVERLY, ET AL     449

Opinion.

"'To provide for lighting the streets and all public places in said town, and for supplying the inhabitants thereof with light;

"'To provide for the acquisition or erection and maintenance of such works as may be necessary or convenient for supplying such light, and to fix, alter, regulate and control the price and use of light so supplied;

"'To borrow money for municipal purposes on the credit of the corporation, and to issue bonds therefor in the manner and under the restriction hereinafter provided;

"'To provide for the payment of the legitimate expenses of the corporation, and for the annual payment through the medium of a sinking-fund or otherwise, of a portion of its bonded indebtedness now existing, or hereafter to be created;

"'To make general assessments of property in said town, and assess and collect taxes and other rates and charges thereon for municipal uses and purposes;

"'To exercise all municipal powers necessary to the proper administration of the municipal government, and for the well-being of the inhabitants of said town, whether said powers be expressly enumerated herein or not;

"'To order and direct the owner or owners of any lands situate on any street in said town, where there is or may hereafter be a water main or sewer main, to tap the same, and to connect said water or sewer main by a pipe or a proper drain with the lands and buildings so situate on said street.'"

By *Section* 16 of the act, the Council was directed to ascertain by the first Monday in April—

"the amount necessary to cover the expense of the government of the Town for the current fiscal year, including maintenance of streets, police, assessment, collection of taxes and cost of light; and shall make up a budget containing the items and estimated amounts necessary to cover each and every branch and item of said Town government."

"By *Section* 20, it was provided that 'The Mayor and Council of Middletown may borrow money for municipal purposes of any character whatsoever upon the credit of said town, and issue bonds for the payment of the same,' subject to the action of the voters at a special election.

"By *Section* 21, the Mayor and Council were given authority to refund any of the bonded debt of the town, and by *Section* 22, to provide for the sinking-fund requirements of all bond issues then or thereafter outstanding. By *Section* 23, all ordinances adopted by 'the Commissioners of the Town of Middletown,' and then in force, shall so remain until repealed by 'the Mayor and Council of Middletown.'

"By *Section* 24, all the acts and doings of 'the Commissioners of the Town of Middletown' lawfully done, and any debt incurred, 'are declared to be unaffected and unimpaired by this act of reincorporation, and are hereby ratified and confirmed.'

"All taxes, etc., due to the Commissioners of the Town of Middletown were to be unaffected by the reincorporation, and finally the act was to be taken as a public act, and there is no general or special repealing clause therein."

The plaintiff contends that the act of 1923, entitled "*An Act to Reincorporate the Town of Middletown*," vests in the Mayor and Council the control of the light and water plants of the town, and

that the Board of Light and Water Commission created by the act of 1893, no longer exists. Such contention is based on two grounds, viz.:

First. The two acts cannot stand together, and are repugnant to each other in those provisions which relate to this branch of the municipal government, and therefore the latter act, without express words of repeal, does in fact repeal the earlier act.

Second. The act of 1923 provides for a general system of government for the town of Middletown, complete in itself, and must, therefore, be regarded as conclusive evidence of the legislative intent and purpose to substitute the latter for the former, and consequently is a repeal of the former.

[1, 2] In support of this contention the plaintiff invokes the well-settled law respecting repeal of statutes by implication, where there is no repealing clause. Such law was very clearly expressed by this Court in the case of *Husbands v. Talley*, 3 *Penn.* 88, 47 *Atl.* 1009, as follows:

"These authoritative adjudications clearly show that, in determining questions of repeal by implication, the legislative intention is the controlling factor, and its ascertainment the paramount object.

"The enactment of a general system of government complete in itself, or the revision of a previous statute or statutes, covering the entire subject of such prior enactments, and the consolidation thereof, especially with new provisions, in a single act complete in itself, is regarded as evidence of the legislative intent and purpose to substitute the latter for the former, and consequently is a repeal thereof."

Counsel for the defendants does not deny that this is the law, but disputes its applicability to the facts of the present case. He admits that in determining a question of repeal by implication the legislative intention is the controlling factor, and that the enactment of a general system of government complete in itself is regarded as evidence of such intention. But he insists that, repeals by implication not being favored, such intention must be clearly shown by the facts in the case, and it is not so shown in the present case.

Repeal by implication being a question of legislative intent, which intent must be gathered from the language of the statutes in question, adjudicated cases are found to be of but little, if any,

assistance, for every case must depend upon its own facts to a very large extent. Neither is much help derived, in this case, from writers on statutory construction, but there is a statement in Lewis' Southerland Statutory Construction, *Section* 249, the latter part of which seems to have particular application to the facts of the instant case, viz.:

> "A Statute creating a board of public works for cities of the first class and conferring powers on such board impliedly repeals so much of former statutes as confers the same powers upon the city councils. And generally an act vesting the control of a thing in one body or board is repealed by a subsequent act vesting the same control in another body or board."

[3] What are the undisputed facts in this case? In the first place, they may be said to be the many legislative acts above referred to. In the second place, we think this important fact is undisputed, viz.: That under the act of 1923, the Mayor and Council of Middletown, the new corporation, had power to erect, take over, operate and control, a water and lighting system for said town as fully as the Board of Light and Water Commissioners of said town could do under the act of 1893 that created said Board.

The position of the defendants, as we understand it, is not that the plaintiff corporation did not have such power, but that such power must be exercised by and through said Board of Light and Water Commission already created and not directly or by a new agency of its own creation.

It is claimed that "while the Board of Light and Water Commission were not expressly created a corporation independent of the town government, they were constituted an entity, by whatever name it might be described, distinct and independent of the town corporation."

Counsel for the defendants makes a distinction between the governmental powers of a municipal corporation, and what he terms its business powers, which may be vested in a board that constitutes, in a sense, a separate business entity having no connection, or but very slight connection, with the governmental corporation. Such he contends was the nature of the Board of Light and Water Commission created by the act of 1893, and that it was the intent of the Legislature in passing the reincorporating

act of 1923 to leave such board undisturbed, and with the same
powers it had before. It is argued that while the later act was an
implied repeal of the governmental powers previously conferred
on the prior corporation, "the Commissioners of Middletown,"
it does not affect a business agency previously created by the
Legislature to provide and operate a light and water system for
the town.

We think such contention cannot be sustained if the Mayor
and Council of Middletown, the new corporation, has full power
to furnish the town with light and water and provide all the means
needful for the purpose.

There is a case in 137 *Ill.* 660, 27 *N. E.* 698, *Board of Water
Com'rs v. People ex rel.*, which in some respects is strikingly similar
to the instant case, and very pertinent to this point. We quote
therefrom the following:

"This partial analysis of the act of incorporation of the 'Board of Water
Commissioners of the City of Springfield' shows that said board was not such
an independent and distinct corporate existence and separate legal entity as
that it formed no part of the municipal government of the City of Springfield,
and could not be affected by subsequent changes made by the General As-
sembly in the charter of the city. The act was, in substance and in fact, and
in legal effect, an addition to the charter of the City of Springfield, and in-
vested the city with new and additional powers. It created a board of water
commissioners as a department of the municipal government of the city. The
whole scope and intent of the act indicates that this board was but a part and
parcel of the city government. The mere fact that the Legislature saw fit, for
purposes of convenience and of administration, to give it a corporate existence,
and invest it with certain corporate powers, did not prevent it from being
simply a branch or an agency created for a special purpose of the municipal
government. Without the active co-operation of the city council it would have
been wholly unable to effect the objects of its creation."

It is not necessary to again refer to the many broad powers
given to the Mayor and Council of Middletown by the act of
1923, in which there is a manifest intent to cover the entire field
of governmental powers. One of its general provisions is as follows:

"To exercise all municipal powers necessary to the proper administration
of the municipal government, and for the well-being of the inhabitants of said
town, whether said powers be expressly enumerated herein or not."

Specifically, power was given by the act of 1923—

"To supply said town and its inhabitants with water, and to protect the
water to be used from contamination; to provide for the acquisition or erec-

tion and maintenance of such works as may be necessary or convenient for supplying water, ·and to fix, alter, regulate and control the price and use of water so supplied."

Powers fully as complete and comprehensive were given for furnishing the town and its inhabitants with light.

We have, therefore, if defendants' position be sound, this situation: two existing agencies, the one an unincorporated board, but created by legislative act; and the other a municipal corporation subsequently formed and clothed with the same powers and duties with respect to the same subject-matter.

We think the Legislature did not contemplate such a situation.

But the defendants say, there were certain specific and important provisions in the act that created the Board that are not in the reincorporation act of 1923, viz.:

1. A provision making all sums due by the residents for the use of light and water, liens upon the property, and collectible from the property.

2. A provision giving to the collector of light and water rent all the powers conferred by law upon collectors of school rates.

3. A provision imposing a penalty upon persons who maliciously injure the light and water works or the water supply.

4. A provision requiring that all supplies or contracts exceeding in the aggregate a value of fifty dollars shall be advertised for by the Board of Light and Water Commissioners, etc.

It is argued that the failure to cover or supply these four provisions by the new statute is a clear indication that the Legislature intended they should remain, and inasmuch as the Board of Light and Water Commissioners was and is the only agency by which they could be carried out, such board must also remain. And, there being in the new act no express repeal of prior acts, it is insisted that the failure to supply said provisions of the old law and create another agency in the place of the Board of Light and Water Commission, is a sufficient indication of legislative intent to rebut an implied repeal of the law that created said board.

The obvious reply to this argument is, that the system provided by the act of 1923 was complete in itself and covered the

entire subject of light and water embraced in the statute of 1893. The fact that the four non-essential provisions above mentioned were not included in the reincorporation act is not, we think, an indication that they were to remain and the Board continue to function.    A more reasonable inference, when the entire act of 1923 is considered, is that the Legislature deemed it unwise or unnecessary to incorporate them and purposely omitted them from the later act.

The defendants attach much importance and significance to a recital in the act of 1893, that "It is the desire of the citizens, tax payers of said Middletown, to embrace in a separate board of commissioners the management and control of their works for the supply of light and water and all matters thereto pertaining"; also to *Section* 2 of said act, which creates five persons, "a Board of Light and Water Commission," prescribes their duties, their terms of office, the election of their successors, the filling of vacancies, the qualification of voters, etc.; and to *Section* 3, which provides for the organization of the Board of Light and Water Commission by the election of president, secretary and treasurer.

Before the creation of said Board , full power to furnish light and water for the town was vested in the commissioners of Middletown.    If the Board had not been created it would scarcely be contended that the act of 1923 did not repeal that which vested in the commissioners of Middletown power to furnish light and water for the town.    We are unable to see why the act of 1923 did not likewise repeal the law of 1893 which transferred from the commissioners to the Board the power and duty to furnish light and water for the town.

The court, after an examination of all the material statutes, are clearly of the opinion that the act of 1923, reincorporating the Town of Middletown, repeals the act of 1893 which created the Board of Light and Water Commission for said town, and that said Board, therefore, no longer exists.

The Court are of this opinion because the later act provides for a general system of municipal government for the town of Middletown complete in itself and covering the entire subject of

light and water for said town, which must be regarded as evidence of the legislative intent and purpose to substitute the provisions of the later act for those of the former.