THE STATE OF DELAWARE, upon the relation of Percy
Warren Green, Attorney-General, *v.* JOHN C. FOOTE.

(*August* 29, 1933.)

LAYTON, C. J., HARRINGTON, RICHARDS, RODNEY and REINHARDT, J. J., sitting.

*E. Ennalls Berl,* City Solicitor, for the State.

*James R. Morford* for the defendant.

Court in Banc for New Castle County. Case certified to that Court by the Superior Court for New Castle County, being No. 215, May Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

The question before the Court is whether the oppointment of the defendant required confirmation by the Council. If the appointment did not require confirmation it was in all respects legal, and the defendant is entitled to hold and to exercise the office. On the other hand, if the appointment was not a legal and valid appointment unless confirmed by the Council, the defendant is not entitled to hold the office, but is a usurper.

The *Act* of 1921 contains no express repeal of the *Act* of 1907. It does, however, contain a usual provision, "All Acts, or parts of Acts, inconsistent with this Act are hereby repealed." *Section* 16. This provision is not of importance, as it is only declaratory of what would be the effect of the act without the provision. 25 *R. C. L.*, § 165, *p.* 912.

And if the later Act does, in fact, repeal the earlier Act, insofar as the manner of accomplishing appointments to the office of Director of Public Safety is concerned, the repeal is implied or constructive, and it is, therefore, incumbent upon the Court to consider carefully the pertinent provisions of the two statutes to arrive at the legislative intent with respect to the necessity of confirmation by the Council of the appointment of the defendant.

The petitioner contends that the language of the *Act* of 1921 is so clear in itself as to leave no room for interpretation; that the *Act* of 1921 is plainly inconsistent with the *Act* of 1907; that the *Act* of 1921 deals completely with

the subject matter of the *Act* of 1907, and, therefore, it has the effect of repealing the prior Act as to that subject matter; and that the later Act is a special Act dealing with the same subject matter of the earlier .general Act, and will prevail over the earlier General Act.

The law is well settled in this state that:

■ Repeals by implication are never favored. *State v. Fahey,* 2 *W. W. Harr.* (32 *Del.*) 504, 126 *A.* 730, 734.

■ In determining questions of repeal of statutes by implication the legislative intention is the controlling factor, and its ascertainment the paramount object. *Husbands v. Talley,* 3 *Penn.* 88, 47 *A.* 1009, 1013; *State v. Peverly,* 2 *W. W. Harr.* (32 *Del.*) 443, 125 *A.* 421.

■■ When there are two Acts on the same subject the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the later Act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first. *District of Columbia v. Hutton,* 143 *U. S.* 18, 12 *S. Ct.* 369, 36 *L. Ed.* 60, adopted in *Husbands v. Talley, supra.*

■ Or, to state the rule in another way, "statutes should be construed in connection with the previously existing statutory or common law upon the same subject. Whether such statutes repeal the previously existing law, in the absence of a repeal in express terms, depends upon the presence or absence of an irreconcilable inconsistency between them, unless it is manifestly clear that the later enactment is intended to supersede the earlier law and embrace the whole subject-matter." *State v. Donovan,* 5 *Boyce* (28 *Del.*) 40, 90 *A.* 220, 224.

Examining the material provisions of the *Act* of 1907 it is found that the participating power, or right of veto, of the Council with respect to appointments to office by the Mayor is not unrestricted, but is partial or qualified, in

that, (a) unless the Council acts upon the submitted appointment within ten days, it is valid without confirmation; and (b) if the Council shall have acted adversely upon two successive appointments submitted to it, the Council has no right of veto with respect to the third appointment.

Under this Act a situation may arise in which the Council, by inattention, indifference, neglect or refusal to act, forfeits its right to participate in the appointment; or a situation may arise where the Council, through unreasonable refusal to act favorably upon either of the first two appointments submitted to it, may deprive itself of its right and power to participate in the appointment of the third selection of the Mayor; or, a situation may arise where the Council, reasonably may refuse to approve two successive selections submitted to it, and thereby be deprived of its right to a voice in the third selection; and, it is not impossible that the last situation might be deliberately created in order that an appointment may be made untrammeled by action of the Council. The provisions of the *Act* of 1907 may, therefore, be regarded as unusual. No doubt they were enacted to prevent an *impasse* between the Mayor and Council to the detriment of the interests of the public, but, at the same time, within those same provisions lurks a potentiality for evil, for it is apparent that a determined Mayor may, in effect, deprive the Council of any real voice in the selection of the most important officers of the municipality.

Considering the *Act* of 1921, and comparing its provisions with respect to the manner of appointment of Directors of Public Safety with the manner of other mayoralty appointments, it is found that the idea of necessity of confirmation by the Council permeates the entire provision. In the *Act* of 1921, under which the Department of Public Safety was created and established, the first three directors are named in the Act itself for terms of six, four and two years respectively, and after the statement of each term

of years appear the words "or until his successor shall be duly appointed and confirmed." Next follows the power of the Mayor to appoint to fill vacancies caused by expiration of term of office, or the general power of appointment, and this power is conferred with an expressed qualification, "said appointment shall be subject to the confirmation of 'The Council,' of 'The Mayor and Council of Wilmington.'" Then follows the specification of the term of office of Director of Public Safety, to-wit, six years from the first of May ensuing, followed by, "or until his or her successor shall have been appointed and confirmed." Next in order is the paragraph containing the provisions empowering the Mayor to appoint to fill vacancies caused otherwise than by expiration of term of office, the concluding words of which paragraph are, "and shall also be subject to confirmation by 'The Council,' of 'The Mayor and Council of Wilmington.'"

■■ The words and phrases, "and confirmed," and, "subject to confirmation by the Council" evidently were not inserted inadvertently or casually or without definite purpose and intent, and they must be given the force and effect to which they are entitled; for where a statute directs the performance of a certain thing in a particular manner it implies that it shall not be done otherwise.

And, there is a reasonable explanation for the insistence in the later Act upon confirmation by the Council of appointments to the office of Public Safety Director. The Department of Public Safety is without doubt the most important Department of the Government of Wilmington. It manages and controls the great Departments of Police and Fire. Its directors have large powers and great authority, and it is entirely reasonable to suppose that the Legislature intended that in every situation, under which the appointment of these officers might arise, the Council should and must have and bear the responsibility of examining the qualifications and characters of the nominees, and of approving or rejecting them.

The reasonable inference when the entire *Act* of 1921 is considered, is that the Legislature deemed it unwise to continue in force, with respect to the appointment of directors of Public Safety, the method and manner of accomplishing mayoralty appointments as established by the *Act* of 1907.

An unrestricted and positive requirement of confirmation, as contained in the *Act* of 1921, is, without doubt, hopelessly irreconcilable with a requirement for confirmation as to which there are exceptions and qualifications, as contained in the *Act* of 1907. Or, viewing the matter, not from the standpoint of the power of the Mayor, but from the standpoint of the right and duty of the Council, a positive duty and responsibility enjoined upon the Council by the *Act* of 1921 may not be harmonized with a duty and responsibility which under the *Act* of 1907 may be evaded, or which in certain cases, may not rest at all upon the Council.

The language of the *Act* of 1921 requiring confirmation by the Council of appointments to the office of Director of Public Safety is so clear and unambiguous that the rule is applicable that, where a statute is plain and within the legislative power it acts as its own interpreter. *Brown v. Wilmington & Brandywine Leather Co.,* 9 *Del. Ch.* 39, 74 *A.* 1105.

And as said in *State v. Fahey, supra,* "No rules of construction can control the plain intent of the Legislature where such an intent can be clearly ascertained."

Having found, therefore, a manifest, material and irreconcilable repugnancy and inconsistency in the two statutes, both cannot stand. One must fall, and "in such case the later law prevails as the last expression of the legislative will." 1 *Sutherland, Stat. Cons.* (*2d Ed.*) 247.

The Court, therefore, holds that it was the inten-

tion of the Legislature to require confirmation by the Council of all appointments by the Mayor to the office of Director of Public Safety. Upon no reasonable hypothesis may this Court fail to give the force and effect to the plain, certain and unambiguous language of the *Act* of 1921, nor can it arrive at any other result by any construction, fair and reasonable, than to hold that the *Act* of 1907 relating to mayoralty appointments is constructively repealed by the *Act* of 1921 insofar as the appointment and confirmation of Directors of Public Safety are concerned.

It is also decided in this state that,

"The enactment of a general system of government, complete in itself, or the revision of a previous statute or statutes covering the entire subject of such prior enactments, and the consolidation thereof, especially with new provisions, in a single act complete in itself, is regarded as evidence of the legislative intent * * * to substitute the latter for the former, and consequently is a repeal thereof." *Husbands v. Talley, supra.*

And to the same effect are *State ex rel. Mayor and Council of Middletown v. Peverly, et al.,* 2 *W. W. Harr.* (32 *Del.*) 443, 125 *A.* 421, 424, and *State v. Donovan, supra.*

We are of the opinion, after carefully considering the *Act* of 1921, that it does deal comprehensively and completely with the subject matter, to-wit, The Department of Public Safety, of the City of Wilmington. Under it, the Department was created and established, its powers and duties are defined, and the manner by which its directors are to be appointed is expressed precisely and without ambiguity, and we, therefore, must hold that prior legislation with respect to the manner of appointment of municipal officers generally is abrogated so far as concerns the appointment of Directors of Public Safety.

We are also of the opinion, as urged by counsel for the petitioner, that the *Act* of 1921 being a special and later Act, is not affected by the provisions of the earlier

general *Act* of 1907 with respect to the method and manner of making and perfecting municipal appointments.

As stated in *Corpus Juris, Vol.* 59, *page* 1057:

"It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute, whether it was passed before or after such general enactment. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special statute will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication."

As stated in 25 *R. C. L., page* 929:

"It is well settled that a special or local law repeals an earlier general law to the extent of any irreconcilable conflict between their provisions, or speaking more accurately, it operates to engraft on the general statute an exception to the extent of the conflict."

To like effect are:

*Townsend v. Little,* 109 *U. S.* 504, 3 *S. Ct.* 305, 27 *L. Ed.* 1012; *D'Esterre v. City of New York,* 104 *F.* 605 (*C. C. A.* 2); *Hays v. City of Muskogee,* 117 *Okl.* 158, 245 *P.* 842; *Davis v. State* (*Okl. Cr. App.*), 1 *P.* (2d) 824; *People v. Thompson* (*Sup.*), 187 *N. Y. S.* 395; *Trustees of Independent School Dist. v. Johnson County Democratic Executive Committee* (*Tex. Civ. App.*); 52 *S. W.* (2d) 68; *State ex inf. Barrett v. Imhoff,* 291 *Mo.* 603, 238 *S. W.* 122, 125; *Greaves v. Hinds County* (*Miss.*), 145 *So.* 900.

The *Act* of 1907 is a prior, general statute, an amendment to the City Charter, conferring upon the Mayor and the Council certain powers with respect to mayoralty appointments in general, and the method and manner of completing them. The *Act* of 1921 is a later, special statute, creating a new Department of the City government, and dealing solely with that Department. It deals fully and comprehensively with the subject matter which gives rise to the question before the Court, and its provisions must be held to operate to the exclusion of provisions in the earlier, general statute respecting the same subject matter.

Whether it is more accurate to say that the later, special statute creates an exception to, or qualification of, the earlier general statute, or whether, the provisions of the later statute being manifestly inconsistent with the earlier statute, an implied repeal of the earlier statute results, is not important, as the effect is the same. Rules of construction, in whatever phraseology, are but guides to ascertain the legislative intent.

Counsel for the defendant contends that there is no inconsistency in and between the *Act* of 1907 and the *Act* of 1921. In his brief of argument, he says:

"It is to be observed that the 1907 amendment to the City Charter has three distinct phases:

"(1) The method of making appointments to municipal offices generally.

"(2) The procedure upon failure of 'The Council' to act upon appointments within ten days after the same are made by the Mayor.

"(3) The procedure and method of making appointments in the event 'The Council' acts adversely upon two successive appointments by the Mayor.

"The 1921 act creating the Department of Public Safety, so far as the same deals with the question of the appointment of Directors, covers but one of the three phases of the 1907 law, viz.: the method of appointment generally and in that respect there is no inconsistency or repugnancy between the two statutes. In other words the 1907 statute deals with two matters not attempted in any way to be included within the purview of the 1921 statute relating to the Department of Public Safety, viz.: (2) and (3) above stated.

"We believe it to be obvious without the consideration of technical rules of statutory construction that the 1907 Charter provision in its second and third phases covers matters not attempted in any way to be dealt with in the 1921 law relating to the Department of Public Safety. The 1907 Charter provision relates to all municipal appointments 'which the Mayor, by law now or hereafter may have the power to make.' *The provision in the 1921 law requiring the Mayor's appointments of Public Safety Directors to be subject to the confirmation of Council was, therefore, surplusage and adds nothing whatsoever to the law then existing."*

With this we cannot agree. We are not dealing with a phase or aspect of the *Act* of 1907, but we are dealing with the plain and unambiguous mandate of the *Act* of 1921.

This argument would require the Court to deny the recognized rule of construction, which is, to seek the intention of the Legislature primarily from the language of the

statute itself; *Federal Mining & Smelting Co. v. Witten-berg*, 15 *Del. Ch.* 409, 138 *A.* 347, 55 *A. L. R.* 1; 2 *Suther-land Stat. Cons.* (*2d Ed.*) 366; and it leads to false conclusion that the Court is to seek the intent of the Legislature in enacting the *Act* of 1921 by looking solely to the language of the *Act* of 1907.

Obviously the Court is not permitted to reject the words "and confirmed," and the phrase "subject to confirmation by the Council," so frequently inserted, as mere surplusage. There is no rule of construction which permits such liberty to be taken with statutory language, while authority is found in our own state positively forbidding this to be done.

In *Silvia v. Scotten*, 2 *W. W. Harr.* (32 *Del.*) 295, 122 *A.* 513, 516, it was argued that the word "dependents" might be regarded as surplusage, but Chancellor Wolcott, speaking for the Supreme Court, said:

"In order to escape the conclusion that the statute means to sub-rogate the employer to the rights of 'dependents' (which term includes the widow) and thus to avoid the logical consequences flowing there-from, the plaintiff in error argues that the word 'dependents' when-ever it appears in the section must be rejected as surplusage. We do not feel warranted, however, in dealing so freely with the language of the Legislature. It must be assumed that the word was employed to express a purpose, and being able as we are to discover a rational purpose in its use, we are not at liberty to strike the word from its context."

Certainly it cannot be said that a departure from the rather extraordinary provisions of the *Act* of 1907 relative to confirmation of mayoralty appointments is evidence of an irrational purpose. On the contrary we think it is evidence of an extremely rational purpose. The Legislature saw fit, in plain and unambiguous terms, not only to give to the Council a share of the responsibility in appointments to the office of Director of Public Safety, but to compel the Council to exercise that share of responsibility, in precisely the same manner as the State Senate is compelled to share the responsibility in certain gubernatorial appointments.

█ It is true the intent to repeal must very clearly appear and Courts will not hold to a repeal if they can find reasonable ground to hold the contrary, especially where the repeal will have the effect of impairing a settled prerogative of government; citing *U. S. v. Shaw (C. C. A.)*, 39 *F*. 433, 436, 3 *L. R. A.* 232.

But we cannot agree with the conclusion of counsel for the defendant stated in his brief as follows:

"The Charter of the City of Wilmington in the respect here relied upon established what may now be regarded as a settled prerogative of the executive head of the City Government, viz.:

"(1) the right to have his appointment become absolute in the event Council does not act upon the same within ten days, and

"(2) the right to make a third appointment without confirmation in the event Council has acted adversely upon two prior and successive appointments. Neither the 1921 law creating the Department of Public Safety nor any law thereafter passed should, we submit, be construed as disturbing or unsettling those established prerogatives *unless express language to that effect is used. In fact a legislative intent to repeal in such a case can be evidenced only by express words.*"

If the conclusion of counsel for the defendant is based upon *U. S. v. Shaw*, it suffices to say that this case lays down no such rule.

What the Court does say is this:

"When a statute which proposes to regulate proceedings in suits, in general, and by a doubtful application of its terms to government suits would divest the public of rights, and violate a principle of public policy, and would make provisions contrary to the policy which the government has indicated by many acts of previous legislation, in such case the statute ought not to be construed to impair the settled prerogatives of the government."

This case does not hold that, where settled policy of government is involved, "the legislative intent to repeal can be evidenced only by express words." All that it does say, or is meant to say, is that where settled policy of government is involved, such policy ought not to be disturbed by any doubtful application of a statute.

█ Certainly statutes should be construed, if possible, to harmonize with the general policy as established

by prior legislation, unless the intent of the Legislature is clearly to depart from that policy, but the policy of the law is not controlling, and can only be considered where the statute is ambiguous. 59 *C. J.* 1013.

No authority has been cited, and we think there is no authority, holding that there cannot be, in any event, a repeal by implication arising out of inconsistent provisions of a later statute as compared with an earlier statute, where a settled policy or prerogative of government is involved. In such case the Court will proceed warily and cautiously, but where the inconsistency and repugnancy are manifest, and the legislative intent is clear in the later statute, earlier statutes establishing a prerogative or policy of government may be repealed by implication or construction as in the case of any other subject matter.

Finally, we are referred to *State v. Mayor and Council of Wilmington,* 2 *W. W. Harr.* (32 *Del.*) 42, 118 *A.* 640, and *Di Angelo v. McCormick Bros.,* 19 *Del. Ch.* 307, 168 *A.* 79, as analogous cases. We have read these cases carefully and find nothing in them in conflict with the conclusions we have reached.

The states of facts presented there are so different from the instant case that we can discover no analogy between them.

As was said by Chief Justice Pennewill, in *State v. Peverly, supra,*

"Repeal by implication being a question of legislative intent, which intent must be gathered from the language of the statutes in question, adjudicated cases are found to be of but little, if any, assistance, for every case must depend upon its own facts to a very large extent."

Counsel for the defendant says in his brief:

"This Court we respectfully submit in order to sustain the relator must find a repugnancy where none exists, must emasculate the 1907 Act as applicable to the Department of Public Safety where both Acts can stand together without conflict and must favor an implied repeal when every reasonable intendment is to the contrary."

Viewed correctly, as we think, however, the defendant asks the Court to emasculate the *Act* of 1921, a later, special, complete and comprehensive statute, containing repugnant provisions, in order that an earlier, general statute upon the same subject may survive. This can be done in two ways only: either by reading into the *Act* of 1921 a phrase, "as now provided by the Charter of the City of Wilmington," or other language expressive of the same meaning, or by rejecting as surplusage, material words and phrases contained in the *Act* of 1921; but, as was said by the Supreme Court in *Van Winkle v. State*, 4 *Boyce* (27 *Del.*) 578, 91 *A.* 385, 399, *Ann. Cas.* 1916D, 104,

"When the language of a statute is plain and conveys a clear and definite meaning, courts give to the statute the exact meaning conveyed by the language, adding nothing thereto and taking nothing therefrom."

We, therefore, are of the opinion that the defendant is not entitled to hold and exercise the office of Director of Public Safety, his appointment thereto not having been confirmed by the Council.

It is ordered that this opinion be certified to the Superior Court for New Castle County.